STATE WHOLESALE SUPPLY, INC. v. THURMAN ALLEN, T/A KERR LAKE SUPPLY COMPANY

No. 757DC760

(Filed 4 August 1976)

1. Attorney and Client § 7— sales receipt — invoice — provision for attorney's fees — invalidity

Neither a sales receipt nor an invoice containing a provision for attorney's fees is an "evidence of indebtedness" within the meaning of G.S. 6-21.2 and, absent a written agreement relating thereto, such provision is ineffectual as a matter of law.

2. Usury § 1— open account — applicability of usury statute

A plumbing contractor's open account with a plumbing supply wholesaler constituted an "open-end credit or similar plan" governed by G.S. 24-11, and a two percent service charge on the account violates the one and one-half percent ceiling prescribed by the statute.

3. Usury § 1— higher price for deferred payment — no usury

The sale of merchandise is not usurious when the sale is made for one price if cash is paid and for a higher price if payment is deferred or made in future installments, so long as the transaction is not a subterfuge to conceal a usurious loan.

**4. Interest § 1; Usury § 1— service charge on open account — usurious interest**

> A two percent per month service charge on the unpaid balance of an open account for plumbing supplies did not constitute a "time price" but was a charge for the seller's forbearance in the collection of the debt at the end of the payment period and, as such, constituted interest; such interest was usurious since it exceeded the one and one-half percent allowed by G.S. 24-11, and forfeiture of the entire two percent service charge is appropriate under G.S. 24-2.

APPEAL by defendant from *Matthews, Judge.* Judgment entered 6 June 1975 in District Court, NASH County. Heard in the Court of Appeals 20 January 1976.

The plaintiff, State Wholesale Supply, Inc. (hereinafter referred to as Wholesale), is engaged in the wholesale supply business and sells equipment exclusively to licensed plumbing, heating and air-conditioning contractors. The defendant, Kerr Lake Supply Company (hereinafter referred to as Kerr Supply), is in the plumbing business. In May 1974 the manager of Kerr Supply, on behalf of the company, completed an application for credit with Wholesale. Shortly thereafter an open account was established for Kerr Supply at Wholesale. Although the credit application is not part of the record on appeal or otherwise available for inspection, Wholesale's manager described the informal nature of the credit application on cross-examination: "The credit application which was filled out by Mr. Elmer Deal contained no statement of credit terms or collection charges, it is simply a form asking for credit references. We did not ask Mr. Allen or his wife to sign a personal guarantee of the account when the application was filed as his credit appeared to be good. . . . Prior to extending credit to Kerr Lake Supply Company, I did not, nor to my knowledge did any employee of State Wholesale Supply, Inc., discuss our credit policy with Mr. Allen." Beginning in August defendant purchased equipment and materials from Wholesale on open account. Between 23 August and 13 November at least twenty-five purchases were made by Kerr Supply on open account. No contract or other form of writing was signed by Kerr Supply's representative before or at the time of each purchase. Upon delivery of the merchandise to Kerr Supply's place of business, Wholesale issued Kerr Supply two copies of the sales ticket for that merchandise and required a Kerr Supply employee to sign and return one of the sales tickets to acknowledge receipt of the merchandise. An employee of Wholesale signed the receipt for every delivery

except one. Within three days of the delivery, Wholesale mailed Kerr Supply an invoice, and at the end of each month Wholesale mailed Kerr Supply a monthly statement of the outstanding amount due on the account. The sales tickets and three-day invoice contained the following provisions: "A 2% per month service charge ($5.00 minimum) will be charged on past due accounts. Customer agrees to all attorney's fees and collection expenses up to 15% of the total amount." The monthly statements contained the two percent service charge provision but omitted any reference to attorney's fees. Finally Wholesale offered evidence to the effect that the two percent service charge is a "customary charge" in the wholesale plumbing, heating and air-conditioning business. By stipulation the parties agreed that the defendant owed plaintiff the sum of $6,792.53 as of the compromised date of 1 November 1974.

After presentation of the evidence, the judge entered findings of fact and conclusions of law. Of particular importance to the issues raised by this appeal are the following "Further Findings of Fact and Conclusions of Law":

"1. North Carolina General Statutes Section 24-11 is an enabling statute to allow interest or service charge up to 1½% per month for balance not paid within 25 days (which does not apply to instant case) and applies to charges imposed on CONSUMER or CREDITOR (of which defendant is neither). The defendant does not come under or within the means of this enabling statute. A 2% service charge in this instance and in this type of transaction is not usurious interest in that this charge is a customary service charge in this type of business: that the transaction is not a loan, either expressed or implied, but an extension of credit or service.

"2. That the defendant was aware of and agreed to the 2% service charge and attorney's fee charged through his agent's knowledge (Elmer Deal as Manager of the defendant's business applied for credit and signed some sales tickets with both statements concerning the 2% service charge and attorney's fee printed thereon); that defendant took advantage of the 2% discount by the 10th of the following month which was stated on the 3-day invoices and on which the 2% service charge and attorney's fee allowance was stated; that the service charge was stated

Supply, Inc. v. Allen

and added on each monthly statement and the defendant did not object to the terms prior to this action.

"3. Under North Carolina General Statutes Section 6-21.2 the sales ticket and invoice is an evidence of indebtedness on which the attorney's fees for collection is stated and this was known and accepted by the defendant."

Based on these findings, it was ordered that the plaintiff recover from the defendant the sum of $6,792.53, plus service charges at the rate of two percent per month from 1 November 1974 until paid, and attorney's fees in the sum of fifteen percent of the principal amount owed.

*Dill, Exum, Fountain & Hoyle, by John B. Exum, Jr., for the plaintiff.*

*Zollicoffer & Zollicoffer, by Robert K. Catherwood, for the defendant.*

BROCK, Chief Judge.

The plaintiff relied upon the following evidence to show that the defendant incurred the obligation to pay a two percent service charge and attorney's fees: (1) The sales receipt signed by defendant's employee, the three-day invoice, and the monthly statement contained written notice of the two percent per month service charge, and all but the latter contained a provision for attorney's fees; moreover, having received notice of these "credit terms," the defendant continued to purchase goods from the plaintiff on open account; (2) the treasurer and principal stockholder of Wholesale testified that the two percent per month service charge is customary in the wholesale plumbing, heating and air-conditioning industry; and (3) an employee of defendant applied for "credit" before purchasing goods from plaintiff on open account.

Plaintiff's argument seems to be that mere notice of the service charge or attorney's fees after the open account had been approved and initial purchase of goods made constituted an offer which the buyer implicitly accepted by continuing to use the open account. In effect, plaintiff argues that notice of the terms created a duty to protest or cease using the account in order to avoid the service charge and attorney's fees obligations. We disagree. First, the service charge and attorney's fees provisions printed on the sales receipt, invoice, and monthly

statement were not explicitly portrayed as essential conditions for the use of the open account. At the time these terms were communicated to the defendant buyer, the plaintiff had already authorized the defendant to purchase on open account. Secondly, although the plaintiff required the defendant to complete a credit application prior to authorizing defendant to purchase on open account, the credit application made no reference to the service charge and attorney's fees obligations. The plaintiff's failure to prepare and execute a formal agreement with defendant, which unequivocally defined a proper service charge and attorney's fees obligations as credit terms and conditions for the privilege of purchasing on open account, is inexplicable. Indeed the plaintiff approved defendant's application to purchase on open account without entering such an agreement beforehand, and led the defendant to believe that the right to purchase on open account was not subject to a service charge and attorney's fees obligation.

Nevertheless, assuming arguendo that defendant received advance notice of plaintiff's intention to add a two percent service charge and attorney's fees to the amount of indebtedness, we are confronted with whether plaintiff may legally enforce such charges.

The jurisprudence of North Carolina traditionally has frowned upon contractual obligations for attorney's fees as part of the costs of an action. In 1892 the Supreme Court held that a provision in a promissory note which imposed an obligation for a "collection fee" (i.e., attorney's fees) was contrary to public policy and therefore invalid. *Tinsley v. Hoskins,* 111 N.C. 340, 16 S.E. 325 (1892). This longstanding prohibition against attorney's fees obligations is rooted in a variety of concerns: "They [provisions for attorney's fees] can readily be used to cover usurious agreements, and excessive exactions may be under the guise of an attorney's fee"; and "they are not only in the nature of penalties . . . [but also they] tend to encourage litigation." *Tinsley v. Hoskins, id.*

[1] General Statute 6-21.2, enacted in 1967, represents a far-reaching exception to the well-established rule against attorney's fees obligations:

> "Obligations to pay attorneys' fees upon any note, conditional sale contract or other evidence of indebtedness, in addition to the legal rate of interest or finance charges

specified therein, shall be valid and enforceable, and collectible as part of such debt, if such note, contract or other evidence of indebtedness be collected by or through an attorney at law after maturity. . . . "

The statute applies only to "obligations to pay attorneys' fees upon any note, conditional sales contract or *other evidence of indebtedness.*" (Emphasis added.) In our opinion the sales receipt and three-day invoice containing the provision for attorney's fees is not an "evidence of indebtedness" within the meaning of G.S. 6-21.2. Evidence of indebtedness signifies a written agreement or acknowledgment of debt, such as a promissory note or conditional sales contract, which is executed and signed by the party obligated under the terms of the instrument.

General Statute 6-21.2 only validates attorney's fees obligations in certain carefully defined instances and imposes a ceiling on the amount of attorney's fees a party can obtain. It is clear that a "note" and "conditional sales contract" are the primary types of "evidence of indebtedness" contemplated by the statute. General Statute 6-21.2(1) and (2) repeat the reference to "note, conditional sale contract or other evidence of indebtedness" found in the opening declaration of the statute. General Statute 6-21.2(3) and (4) focus specifically on "notes and other *writing(s)* evidencing an indebtedness" (emphasis added) and "an unsecured note or other writing(s) evidencing an unsecured debt" respectively. General Statute 6-21.2(4) refers specifically to "conditional sale contracts and other such security agreements which evidence both a monetary obligation and a security in or a lease of specific goods. . . . " These provisions indicate, either explicitly or implicitly, that an evidence of indebtedness (such as a note or conditional sales contract) is a *writing* which acknowledges a debt or obligation and which is executed by the party obligated thereby.

In this case a formal credit agreement executed by the parties *prior to* the establishment of the open account would have sufficed as an evidence of indebtedness; and had such an agreement contained a provision for attorney's fees, it would be valid and enforceable pursuant to G.S. 6-21.2. Instead, plaintiff inserted the provision for attorney's fees in the sales receipt and three-day invoice, mere business records of defendant's purchase and the amount of money due plaintiff for the purchase. Neither

the sales receipt nor invoice is an evidence of indebtedness within the meaning of G.S. 6-21.2. Therefore, the provision for attorney's fees in the sales receipt and invoice, absent a written agreement by defendant, is ineffectual as a matter of law. The trial court's finding and conclusion to the contrary are erroneous.

[2] The next question raised by this appeal is whether the open account and service charge for the unpaid monthly balance is governed by G.S. 24-11. General Statute 24-11(a) provides, in part:

> "On the extension of credit under an open-end credit or similar plan (including revolving credit card plans, and revolving charge accounts, but excluding any loan made directly by a lender under a check loan, check credit or other such plan) under which no service charge shall be imposed upon the consumer or creditor if the account is paid within twenty-five days from the billing date, there may be charged and collected interest, finance charges or other fees at a rate in the aggregate not to exceed one and one-half percent (1½%) per month on the unpaid balance of the previous month. . . ."

Unlike the Retail Installment Sales Act (Chapter 25A), the application of G.S. 24-11 is not limited to "consumer credit sales"; it extends to transactions between merchants as well as transactions involving a consumer. Moreover, G.S. 25A-11 defines a "revolving charge account contract" as follows:

> " 'Revolving charge account contract' means an agreement or understanding between a seller and a buyer under which consumer credit sales may be made from time to time, under the terms of which a finance charge or service charge is to be computed in relation to the buyer's unpaid balance from time to time, and under which the buyer has the privilege of paying the balance in full or in installments."

However, the statute explicitly provides that "[t]his definition shall not affect the meaning of the term 'revolving charge account' appearing in G.S. 24-11(a)." Indeed the scope of G.S. 24-11 appears to be considerably broader than G.S. 25A, but the specific difference in meaning between the "revolving charge account" described in G.S. 24-11(a) and the "revolving charge

account" defined by G.S. 25A-11, if any other than the fact that G.S. 25A-11 is limited to *consumer* credit sales, is unclear. In our opinion the open account and service charge in this case constitutes an "open-end credit or similar plan" governed by the provisions of G.S. 24-11. The two percent service charge clearly violates the one and one-half percent ceiling prescribed by the statute.

Defendant contends that the portion of the service charge in excess of the one and one-half percent monthly charge allowed by G.S. 24-11 is usurious; furthermore, it is argued that the appropriate remedy is forfeiture of the entire interest pursuant to G.S. 24-2. On the other hand, plaintiff contends that the two percent monthly service charge is not usurious because it is not interest charged for a loan or forbearance of money.

[3] Usury is the charging of interest in excess of the legal rate for the hire or use of money. The essential elements of an action for usury are well settled and need not be repeated herein. *See Hodge v. First Atlantic Corp.,* 10 N.C. App. 632, 179 S.E. 2d 855 (1971). Usury only pertains to a loan or forbearance of money, not a *bona fide* sale. In recent years the definition of bona fide sale has been expanded to include credit sales in which the difference between the cash price and the credit or time price is greater than the allowable rate of interest.

> "A vendor may fix on his property one price for cash and another for credit, and the mere fact that the credit price exceeds the cash price by a greater percentage than is permitted by the usury laws is a matter of concern to the parties and not to the courts, barring evidence of bad faith. (Citations omitted.)
> . . . .
>
> "If there is a real and bona fide purchase, not made as the occasion or pretext for a loan, the transaction will not be usurious even though the sale be for an exorbitant price, and a note is taken, at legal rates, for the unpaid purchase money. The reason is that the statute against usury is striking at, and forbidding, the extraction or reception of more than a specified legal rate for the hire of money, and not for anything else; and a purchaser is not, like the needy borrower, a victim of a rapacious lender, since he can refrain from the purchase if he does not choose

to pay the price asked by the seller." *Bank v. Merrimon,* 260 N.C. 335, 132 S.E. 2d 692 (1963).

Thus it appears that the sale of merchandise is not usurious when the sale is made for one price if cash is paid and for a higher price if payment is deferred or made in future install- ments, so long as the transaction is not a subterfuge to conceal a usurious loan.

In *Bank v. Merrimon, id.,* the defendant purchased a sec- ond-hand car from a dealer; she paid $500.00 in cash, executed a promissory note for the remainder of purchase price payable in monthly installments, and executed a chattel mortgage to the dealer and a third party trustee as security for the note. In addition she signed a "confirmation of sale" which listed the "cash selling price" of the car and the "differential for time payment." A subsequent case affirming the time price doctrine, *Bank v. Hanner,* 268 N.C. 668, 151 S.E. 2d 579 (1966), also involved a conditional sales contract, finance charges greater than the rate of interest permitted by the usury statute, and a chattel mortgage to secure the outstanding balance.

Defendant relies upon *State v. J. C. Penney Co.,* 48 Wis. 2d 125, 179 N.W. 2d 641 (1970) ; *see* 41 A.L.R. 3d 660. There, a department store's charge of one and one-half percent monthly interest on the declining balance of its revolving charge account was declared usurious on the theory that the deferment of pay- ment for goods purchased transformed the relationship between the vendor and buyer into that of creditor-debtor; a forbearance occurred when the buyer failed to pay within the prescribed period (30 days) and, simultaneously, the vendor refrained from collecting the existing debt in exchange for the service charge. The time price doctrine was deemed inapplicable to this transaction due to the absence of a fixed time price at the time of the sale. According to this opinion, the time price doctrine requires that the cash price *and* time price be fixed and quoted to the buyer at the time of the sale in order to afford the buyer a genuine choice.

[4]  In our view the two percent per month service charge sought to be imposed by plaintiff does not constitute a "time price" but is a charge for plaintiff's forbearance in the collec- tion of the debt at the end of the payment period; as such, the two percent per month service charge is interest. The two percent service charge exceeds the maximum one and one-

half percent allowed by statute and is usurious. The trial judge was in error in finding and concluding to the contrary. A forfeiture of the entire two percent service charge is appropriate under G.S. 24-2.

For the reasons set out above, the plaintiff is not entitled to recover attorney's fees and is not entitled to recover interest except at the legal rate of six percent per annum on the principal of the judgment from the date of its entry on 6 June 1975.

The judgment appealed from is modified to provide for judgment in favor of plaintiff in the sum of $6,792.53, plus court costs (not including attorney's fees) and interest at six percent per annum on the principal amount of the judgment from 6 June 1975.

Modified and affirmed.

Judges BRITT and MORRIS concur.