LOIS B. CARTER, PLAINTIFF v. MARK H. FOSTER, LINDA FOSTER, IMPRESSIVE PAPERS, INC., AND MHF, INC., DEFENDANTS

No. 9019SC160

(Filed 4 June 1991)

1. **Attorneys at Law § 7.4 (NCI3d)— action on a debt—attorney fees—no provision in note**

   The trial court did not err by awarding attorney fees in an action on a debt where there were no provisions for payment of such fees in the evidence of indebtedness. The parties negotiated a settlement of all plaintiff's claims, including attorney fees, and the trial court could properly consider the parties' settlement agreement and its negotiated provisions for payment of attorney fees in deciding plaintiff's motion for summary judgment. Since attorney fees were negotiated as part of a settlement, the court declined to review reasonableness.

   **Am Jur 2d, Compromise and Settlement §§ 24, 25.**

2. **Uniform Commercial Code § 46 (NCI3d)— sale of collateral—claim dismissed**

   The trial court did not err in an action on an indebtedness by dismissing defendants' counterclaim arising from the sale of collateral where defendants did not except to any finding of fact, the findings supported the conclusion that defendant Mark Foster himself sold the collateral with the consent of plaintiff and plaintiff was not responsible for the manner or terms under which defendant Foster sold the collateral; and the conclusions supported the judgment that the counterclaim be dismissed.

   **Am Jur 2d, Counterclaim, Recoupment, and Setoff § 142.**

CARTER v. FOSTER

[103 N.C. App. 110 (1991)]

3. **Appeal and Error §§ 118, 134 (NCI4th)— denial of summary judgment—denial of attorney fees—not reviewable on appeal**

   The denial of plaintiff's motion for summary judgment as to all of her claims was not reviewable on appeal; moreover, the issue of attorney fees on one of the notes was not reviewable because plaintiff did not appeal from the denial of attorney fees on that note after the bench trial.

**Am Jur 2d, Appeal and Error §§ 104, 545 et seq.**

APPEAL by defendants from order entered 1 December 1988 by *Judge Preston Cornelius* and from judgment entered 7 September 1989 by *Judge Thomas W. Seay, Jr.*, in ROWAN County Superior Court. Heard in the Court of Appeals 18 September 1990.

*Carter & Kropelnicki, P.A., by Steven Kropelnicki, Jr., for plaintiff-appellee.*

*Thomas M. King for defendant-appellants.*

PARKER, Judge.

This civil action arose out of plaintiff's agreement to capitalize defendants' business venture, which ultimately failed. Plaintiff and defendants Mark Foster and Impressive Papers, Inc., signed a memorandum of understanding in which plaintiff agreed to make loans to the venture totaling $150,000.00.

For her loan of $100,000.00, plaintiff received a promissory note ("Note 1") dated 7 January 1987, with interest at ten percent and convertible within a year at her option into shares in defendant Impressive Papers, Inc. Note 1 was executed on behalf of Impressive Papers, Inc., by Mark H. Foster, President, and by Mark H. Foster individually. The note contained no provision for payment of attorney's fees in the event of default. Note 1 was secured by a deed of trust of the same date, which referred to "indebtedness, advancements and other sums expended by Beneficiary pursuant to this Deed of Trust and costs of collection (including attorneys fees as provided in the Promissory Note) . . . ." The parties also signed a security agreement under which defendants Mark Foster and Impressive Papers, Inc., as borrowers granted to plaintiff as lender a security interest in assets described in an attachment to the security agreement, in after-acquired property, and in the proceeds of both.

CARTER v. FOSTER

[103 N.C. App. 110 (1991)]

For her loan of $50,000.00, plaintiff received a nonconvertible promissory note ("Note 2") dated 1 July 1987. Note 2 referred to the parties' memorandum of understanding and security agreement. Executed for defendant Impressive Papers, Inc., by Mark H. Foster, president, Note 2 lacked any provision for payment of attorney's fees in the event of default. No deed of trust securing Note 2 appears of record.

On 26 August 1987, the parties executed a document entitled "Agreement," ("Loan Agreement") under the terms of which defendants Mark Foster, Linda Foster, and Impressive Papers, Inc., agreed to repay plaintiff $5,000.00 lent that day and due 7 January 1988 with interest at ten percent. The introductory paragraph of the Loan Agreement stated: "(Registrar: This agreement affects Deeds of Trust in Book 422, Page 382 and Book 472, page 399 if you want to make marginal entries.)" Paragraph two of the Loan Agreement read as follows:

> The security given in the "security instruments" (the two Deeds of Trust mentioned above and the Security Agreement dated January 7, 1987) will stand as security for all $155,000 lent to Borrower by Lender to date, plus interest and attorneys fees and costs of collection. Default in any performance will be default of all security instruments.

After the business venture failed, plaintiff repossessed some of the collateral covered by the security agreement. In February 1988 plaintiff filed the complaint in this action, alleging that defendants had defaulted on Notes 1 and 2 and the Loan Agreement. Without answering the complaint, defendants filed a motion to dismiss for failure to state a claim upon which relief could be granted.

On 12 May 1988, intending to settle their dispute, the parties signed a Stipulation and Settlement Agreement ("Settlement Agreement") and a consent judgment. Paragraph three of the Settlement Agreement provided, "Several defendants owe plaintiff the sums set out in paragraphs 15 [Note 1], 17 [Note 2], and 19 [Loan Agreement] of the complaint, and, in addition, in each case they owe plaintiff attorney's fees in the amount of 15% of the principal amount of each of those debts." Paragraph three of the consent judgment contained an identical statement. Although the Settlement Agreement and consent judgment were signed by defendants Mark and Linda Foster, defendant Mark Foster for the two corporate defendants Impressive Papers, Inc. and MHF, Inc., defense

## CARTER v. FOSTER

[103 N.C. App. 110 (1991)]

counsel, and counsel for plaintiff, the consent judgment was never signed by a judge of the trial division.

In September 1988 plaintiff moved for summary judgment, attaching to the motion copies of the Settlement Agreement and consent judgment. On 1 December 1988 the trial court denied defendants' motion to dismiss and granted plaintiff's motion for summary judgment as to the claims based on Note 1 and the Loan Agreement. The order read in pertinent part:

> 2. Plaintiff shall have and recovery [sic] of defendants Mark H. Foster and Impressive Papers Inc. the sum of $109,587.83, with interest thereon at $30.01 per day from 1 February 1988 until the same be fully paid, and attorney's fees in the amount of $16,438.17.

> 3. Plaintiff shall have and recovery [sic] of defendants Mark H. Foster, Linda Foster, and Impressive Papers Inc. the sum of $5218.75, with interest thereon at $1.43 per day from 1 February 1988 until the same be fully paid, and attorney's fees in an amount of $728.81.

> . . . .

> 4. With regard to the second, forth [sic], fifth, and sixth claims for relief plaintiff's motion for summary judgment is denied.

On 10 November 1988 defendants answered plaintiff's complaint. Later, granted leave to amend this answer to add two counterclaims, defendants counterclaimed that (i) plaintiff's sale of collateral under the security agreement was not conducted in a commercially reasonable way and (ii) plaintiff breached the parties' memorandum of understanding by refusing to capitalize the venture as agreed. Plaintiff's reply included a motion to dismiss both counterclaims for failure to state a claim upon which relief could be granted.

The parties waived trial by jury. The court below heard evidence and at the close of all the evidence defendants voluntarily dismissed their counterclaim for breach of the memorandum of understanding. At the same time, plaintiff moved under Rule 41 to dismiss the counterclaim arising from the sale of collateral. In its judgment of 7 September 1989 the court decreed that defendants' counterclaims were dismissed and forever barred.

On appeal defendants contend the court erred in (i) awarding attorney's fees upon summary judgment for plaintiff on the claims arising from Note 1 and the Loan Agreement and (ii) dismissing their counterclaim arising from the sale of collateral under the security agreement. Plaintiff cross assigns as error the partial denial of her motion for summary judgment in the order of 1 December 1988. For reasons which follow, we affirm the actions of the judges of the trial division.

[1] Defendants first contend the court erred in awarding attorney's fees because there were no provisions for payment of such fees in the evidences of indebtedness between the parties. We disagree.

Obligations to pay attorney's fees on a note or other evidence of indebtedness are "valid and enforceable up to but not in excess of fifteen percent" of the outstanding balance as defined by statute "[i]f such note . . . or other evidence of indebtedness provides for attorneys' fees in some specific percentage of the 'outstanding balance.' " N.C.G.S. §§ 6-21.2 and 6-21.2(1) (1986). Construing N.C.G.S. § 6-21.2, this Court said

> Although "provisions calling for a debtor to pay attorney's fees incurred by a creditor in the collection of a debt" have long been considered against public policy, *Enterprises, Inc. v. Equipment Co.*, 300 N.C. 286, 290, 266 S.E.2d 812, 815 (1980); *Tinsley v. Hoskins*, 111 N.C. 340, 16 S.E. 325 (1892), such provisions are enforceable when specifically authorized by statute. *Enterprises, Inc. v. Equipment Co.; Supply, Inc. v. Allen*, 30 N.C. App. 272, 227 S.E.2d 120 (1976). G[eneral] S[tatute] 6-21.2 "represents a far-reaching exception to the well-established rule against attorney's fees obligations," *Supply, Inc. v. Allen*, 30 N.C. App. at 276, 227 S.E.2d at 124, and specifically approves of an obligation to pay reasonable attorneys' fees found in *any* note "or other evidence of indebtedness." G.S. 6-21.2.

*Reavis v. Ecological Development, Inc.*, 53 N.C. App. 496, 499, 281 S.E.2d 78, 80 (1981) (emphasis in original), *overruled on other grounds by Merritt v. Edwards Ridge*, 323 N.C. 330, 372 S.E.2d 559 (1988).

In the case under review, the parties negotiated a settlement of all plaintiff's claims against defendants, only three of which arose from defendants' default on the three loans. The negotiated agreement settling all plaintiff's claims included a provision for the pay-

**CARTER v. FOSTER**

[103 N.C. App. 110 (1991)]

ment of attorney's fees, but only with respect to the loans in default. In the context of the parties' agreement settling all plaintiff's claims against defendants, these attorney's fees were not an "obligation to pay attorneys' fees upon any note . . . or other evidence of indebtedness" under N.C.G.S. § 6-21.2. Without undermining the intent or force of that statute, parties may, in settling disputes, agree to the payment of attorney's fees. We, therefore, conclude that this case is not controlled by N.C.G.S. § 6-21.2.

"Whether denominated accord and satisfaction or compromise and settlement, the executed agreement terminating or purporting to terminate a controversy is a contract, to be interpreted and tested by established rules relating to contracts." *Casualty Co. v. Teer Co.*, 250 N.C. 547, 550, 109 S.E.2d 171, 173 (1959) (citation omitted). As stated by the North Carolina Supreme Court

> In 5 R.C.L., p. 878, it is said: "It is the duty of courts rather to encourage than to discourage parties in resorting to compromise as a mode of adjusting conflicting claims; and the nature or extent of the rights of each should not be nicely sc[r]utinized. Courts should, so far as they can do so legally and properly, support agreements which have for their object the amicable settlement of doubtful rights by parties; the consideration of each agreement is not only valuable, but highly meritorious. They are encouraged because they promote peace, and when there is no fraud, the court will not overlook the compromise, but will hold the parties concluded by the settlement. . . . Equity [too] favors amicable adjustments, and will not disturb them unless its jurisdictions [sic] [be] invoked in favor of one without knowledge at the time, by satisfactory evidence of deception, fraud or mistake."

*Armstrong v. Polakavetz*, 191 N.C. 731, 734-35, 133 S.E. 16, 17-18 (1926). *Accord Bohannon v. Trotman*, 214 N.C. 706, 720, 200 S.E. 852, 860 (1939). In addition, "[o]nce the parties have entered into an agreement settling a disputed claim, neither party will, in the absence of any element of fraud or bad faith, be permitted to repudiate it." 15A Am. Jur. 2d *Compromise and Settlement* § 7 (1976). Further,

> where the parties agree upon the terms of a compromise, but it is contemplated that their agreement will not be binding until it is committed to writing and signed by the parties, either party has the right to reconsider and repudiate the

terms to which he previously agreed, and there is no valid compromise if a party changes his mind and refuses to sign the written agreement.

*Id.* § 9 at 782. "To avoid an otherwise valid compromise on the ground that it is contrary to public policy, there must be some fact on which the asserted invalidity can rest." *Casualty Co. v. Teer Co.*, 250 N.C. at 552, 109 S.E.2d at 175.

On motion for summary judgment the court may properly consider "material which would be admissible in evidence . . . ." *Kessing v. Mortgage Corp.*, 278 N.C. 523, 533, 180 S.E.2d 823, 829 (1971). While evidence of either an offer or acceptance of consideration in compromising or attempting to compromise a disputed claim is not admissible to prove liability for or invalidity of the claim, N.C.G.S. § 8C-1, Rule 408 (1988), "evidence of a *contract* of compromise between the parties to a suit, whether or not performed, is admissible." 2 H. Brandis, *Brandis on North Carolina Evidence* § 180 (3d ed. 1988) (emphasis in original). If the compromise agreement is "not performed, and suit on the original claim ensues, no policy favors 'the protection of those who repudiate the agreements the making of which the privilege is designed to encourage.' McCormick on Evidence, 3d ed., § 274." *Brandis* § 180 at 58 n.24. The North Carolina Supreme Court has said

[W]here, instead of an unaccepted offer of compromise, there be an express and final agreement upon the matter, there is no reason why either party should not be at liberty to insist on such admission or agreement, whenever it may serve his interest, as on any other admissions or agreements. . . . A concluded agreement of compromise must, in its nature, be as obligatory, in all respects, as any other, and either party may use it whenever its stipulations or statements of fact become material evidence for him.

*Sutton v. Robeson*, 31 N.C. (1 Ired.) 380, 383 (1849).

Applying these principles, the trial court could properly consider the parties' Settlement Agreement and its negotiated provision for payment of attorney's fees in deciding plaintiff's motion for summary judgment. Before this Court, defendants do not argue that they changed their minds and refused to sign the Settlement Agreement. Although defendants wish to avoid the effect of the agreement, they point to no fact which would render it invalid.

Defendants do not argue fraud or bad faith on the part of plaintiff; neither do defendants argue mistake. At the time defendants executed the Settlement Agreement, they were aware of the provision for attorney's fees. In view of long standing policy which encourages the settlement of legal disputes between the conflicting parties and the enforcement of settlement contracts, we hold that in the instant case, the trial court did not err in awarding attorney's fees upon summary judgment. In addition, since the provision for payment of attorney's fees was negotiated as part of the settlement, we decline to review its reasonableness.

**[2]** Defendants' second and final contention is that the trial court erred in dismissing their counterclaim arising from the sale of collateral. Again, we disagree.

The Rules of Civil Procedure provide in pertinent part

After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff . . . . If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this section . . . operates as an adjudication upon the merits. . . .

The provisions of this rule apply to the dismissal of any counterclaim . . . .

N.C.G.S. §§ 1A-1, Rules 41(b) and (c) (1990).

On a motion to dismiss a defendant's counterclaim under Rule 41(b), where all the evidence is in, it is "incumbent upon the judge to consider and weigh it all . . . and render judgment on the merits of the . . . counterclaim in the form directed by Rule 52(a)." *Helms v. Rea*, 282 N.C. 610, 620, 194 S.E.2d 1, 8 (1973). The function of the judge is to evaluate a counterclaimant's evidence free of any limitations as to the inferences which a court must indulge in favor of plaintiff's evidence on a motion for a directed verdict in a jury case. *See Fearing v. Westcott*, 18 N.C. App. 422, 424, 197 S.E.2d 38, 41 (1973). An involuntary dismissal should be granted

if the counterclaimant has shown no right to relief or if he has shown a right to relief but the trial court as trier of fact determines that the party moving for dismissal is entitled to a judgment on the merits. *See Ayden Tractors v. Gaskins*, 61 N.C. App. 654, 660, 301 S.E.2d 523, 527, *disc. rev. denied*, 309 N.C. 319, 307 S.E.2d 162 (1983).

In the context of an involuntary dismissal, the trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if there is evidence to the contrary. The trial court's judgment must be granted the same deference as a jury verdict. *Lumbee River Electric Corp. v. City of Fayetteville*, 309 N.C. 726, 741, 309 S.E.2d 209, 218-19 (1983).

Defendants' Assignment of Error 8 reads as follows: "The court's entry of an unvoluntary [sic] dismissal of Defendants' Counterclaim on the basis that there was competent evidence to prove defendants' claim." Nevertheless, defendants did not except to any finding of fact. Where the assignments of error are insufficient to present the findings of fact for review, the appeal presents the questions whether the findings support the court's inferences and conclusions of law and judgment and whether error appears on the face of the record. *Putnam v. Publications*, 245 N.C. 432, 434, 96 S.E.2d 445, 447 (1957).

Findings relevant to the dismissal of defendants' second counterclaim included the following:

4. In the summer of 1987 Impressive Papers, Inc. owned certain machinery, equipment, and inventory which was covered by the security agreement attached to the Complaint. This collateral was located in a building leased by the corporation from one Ramdin.

. . . .

7. Sometime toward the end of January 1988 plaintiff took possession of the inventory, machinery and equipment by padlocking the building in which it was stored and denying defendants access to it.

. . . .

9. These parties entered into a "Stipulation and Settlement Agreement" dated 12 May 1988. The document actually was signed by all of the defendants in final form on or about

25 May 1988. That document has been offered into evidence and is part of the record in the cause. It provides, in pertinent part, that plaintiff would allow defendants access to the tangible personal property collateral in order to permit defendant to sell that collateral. It provides that the collateral could not be sold without plaintiff's approval of the terms of the sale, that all sale proceeds would be held in trust by defendants' then counsel of record . . . and that the lien created by plaintiff's security would attach to all those proceeds.

10. Plaintiff did permit [defendant Mark] Foster to have access to the collateral and to sell it. He sold a portion of that collateral on or about 14 June 1988 for the sum of $15,000.00 and the balance of the collateral on or about 26 July 1988 for the sum of $40,000.00. He paid the proceeds over to his counsel and [they were] deposited in his trust account pursuant to the terms of the stipulation and settlement agreement.

The trial judge's conclusion of law was that all the evidence, taken in the light most favorable to defendants, showed defendant Mark Foster himself sold the collateral with the consent of plaintiff, and even if he sold it in a commercially unreasonable manner or for less than its fair market value, plaintiff was in no way responsible for the manner or the terms under which he sold the collateral. The court concluded further that plaintiff's motion to dismiss the counterclaim should be allowed.

Under *Fearing*, the trial court as the finder of fact was not required to take defendants' evidence in the light most favorable to them. Hence defendants received the benefit of a more favorable view of their evidence. With respect to defendants' counterclaim arising from sale of the collateral, we conclude the trial court's findings support its conclusions, and the conclusions support the court's judgment that the counterclaim be dismissed and forever barred. We, therefore, hold the trial court did not err in dismissing defendants' counterclaim.

[3] In her cross assignment, plaintiff contends the trial court erred in refusing to grant summary judgment as to all her claims. This contention is not properly before the Court and is overruled. In *Harris v. Walden*, 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985), our Supreme Court held that a denial of summary judgment is not reviewable on appeal after trial.

Moreover, without taking an appeal, an appellee may cross assign as error any omission of the trial court which was properly preserved for appellate review and which deprived the appellee of an alternative basis in law for supporting the judgment from which appeal has been taken. N.C.R. App. P. 10(d). *See also Carawan v. Tate*, 304 N.C. 696, 701, 286 S.E.2d 99, 102 (1982) ("Rule 10(d) provides protection for appellees who have been deprived in the trial court of an alternative basis in law on which their favorable judgment could be supported, and who face the possibility that on appeal prejudicial error will be found in the ground on which their judgment was actually based"). Plaintiff did not appeal from the trial judge's denial of attorney's fees on Note 2 after the bench trial. Hence, the issue of attorney's fees on Note 2 is not a proper subject for review.

Affirmed.

Judges JOHNSON and EAGLES concur.