SOUTHLAND AMUSEMENTS AND VENDING, INC., Plaintiff v. J.M. ROURK, d/b/a MIKE'S WINDJAMMER, Defendant

No. COA00-543

(Filed 17 April 2001)

**1. Discovery— request for admissions—failure to timely respond—no waiver by waiting for answer—withdrawal or amendment prejudicial**

The trial court did not err by denying defendant's oral motion to withdraw its deemed admissions in an action for the alleged breach of an operator agreement for amusement game machines, because: (1) defendant did not serve his answers to plaintiff's request for admissions within the thirty-day time limit set out in N.C.G.S. § 1A-1, Rule 36; (2) a plaintiff does not waive his right to deemed admissions by waiting until after a defendant has answered the request for admissions; and (3) the withdrawal or amendment of the deemed admissions would prejudice plaintiff in maintaining its action on the merits.

**2. Contracts— breach—operator agreement—failure to timely respond to request for admissions—summary judgment proper**

The trial court did not err by granting plaintiff's summary judgment motion in an action for the alleged breach of an operator agreement for amusement game machines, because the exist-

SOUTHLAND AMUSEMENTS & VENDING, INC. v. ROURK

[143 N.C. App. 88 (2001)]

ence of the parties' agreement and the authenticity of defendant's signature on the agreement have already been judicially established by defendant's failure to timely respond to plaintiff's requests for admissions.

**3. Costs— attorney fees—breach of operator agreement— award limited to fifteen percent of outstanding balance**

The trial court erred in an action for the alleged breach of an operator agreement for amusement game machines by granting plaintiff attorney fees in the amount of $3,300.00 upon a verdict of $10,199.49 even though the operator agreement falls within N.C.G.S. § 6-21.2 allowing for an award of plaintiff's attorney fees, because: (1) the damage amount awarded became the outstanding balance due on the agreement or the amount recoverable on the instrument; and (2) the trial court was bound to make fifteen percent of the actual damage award for the attorney fee since the amount of an attorney fee a party is entitled to recover under the statute is limited by the outstanding balance owed.

Appeal by defendant from judgments entered 4 December 1998 by Judge Shelly S. Holt, and 3 December 1999 by Judge J.H. Corpening, II in New Hanover County District Court. Heard in the Court of Appeals 5 February 2001.

*Womble Carlyle Sandridge & Rice, P.L.L.C., by John F. Morrow, Jr., for plaintiff-appellee.*

*Stephen E. Culbreth for defendant-appellant.*

HUNTER, Judge.

J.M. Rourk d/b/a Mike's Windjammer ("defendant") appeals the trial court's judgments denying defendant's request to withdraw his deemed admissions; finding, as a result of those admissions, that there are no genuine issues of material fact so that summary judgment was proper as a matter of law, and; granting Southland Amusements and Vending, Inc. ("plaintiff") an attorney's fee. We hold the trial court judgment as to the deemed admissions and summary judgment are proper; however, we find the trial court's award of an attorney's fee to be in excess of the allowable statutory amount. Thus, we affirm in part and reverse and remand in part.

The pertinent facts are as follows: In its complaint filed 3 December 1997, plaintiff alleged that on or about 9 November 1995, it

entered into a business arrangement with defendant in which plaintiff would place amusement game machines in defendant's place of business. The agreement ("operator agreement") provided in pertinent part:

> 1. . . . [Defendant] hereby grants to [plaintiff] the exclusive right, concession and privilege to install and maintain coin operated game devices of any kind . . . .
>
> . . .
>
> 3. Term.
>
> a. . . . The term of this Agreement shall be for a period of 36 months, commencing as of 11-9-95 . . . .
>
> b. . . . The initial term of this Agreement shall automatically continue for one additional term of five (5) years, unless . . . [plaintiff] shall give written notice of termination . . . .
>
> . . .
>
> 9. . . . [Plaintiff] has the sole and exclusive right and license to install and operate coin-operated game devices of any kind at [defendant's place of business], and [defendant] agrees that it will not rent, purchase, install, permit to be installed or to be used at [its place of business] coin-operated game devices of itself or any other person, firm or corporation during the term of this Agreement or any renewal thereof.
>
> . . .
>
> 12. . . . If [defendant] breaches any provision of this Agreement, then [plaintiff] shall be entitled to recover as damages all of the profits which it would have otherwise earned during the term remaining . . . . If legal action shall be instituted by [plaintiff] to enforce the terms or conditions contained herein, then [plaintiff] shall be entitled to recover from [defendant] the reasonable attorney's fees and costs incurred . . . .

Plaintiff alleged in its complaint that:

> Upon information and belief, in the summer of 1997, in breach of the agreement between the parties, defendant disconnected the machines provided by [plaintiff].

[Furthermore,] in breach of the agreement between the parties defendant installed or allowed to be installed machines owned and operated by a competing vendor.

In response, on 2 January 1998, defendant filed a *pro se* answer claiming that it "never entered into an agreement with [plaintiff and that . . . plaintiff's r]epresentative . . . knows that he never presented a contract to [defendant]. The only signature [it] gave was for accepting delivery of equipment."

Shortly thereafter on 28 January 1998, plaintiff served defendant (who was still *pro se*) with a "Request for Admissions," one of which was an admission that [defendant] entered into and subsequently breached the operator agreement. However, although defendant retained counsel on 4 February 1998, defendant failed to respond to the Request for Admissions until 20 September 1998—some eight months after being served. Then on 19 November 1998, plaintiff filed its motion for summary judgment arguing its appropriateness based on

the depositions, interrogatories and admissions on file, together with affidavits submitted in support of this Motion, [which] show that there is no genuine issue as to any material fact, and that [plaintiff] is entitled to a judgment as a matter of law on the question of the defendant's liability to [plaintiff].

The trial court agreed and, on 4 December 1998, issued its judgment which read in part:

There are no genuine issues of material fact, and judgment is appropriate as a matter of law.

At the hearing on summary judgment, counsel for defendant contended an issue of material fact with respect to contract formation existed because the defendant, at deposition, denied signing the Operator Agreement upon which plaintiff has sued. *The genuineness of the agreement and the genuineness of defendant's signature on it, however, is a fact that has been conclusively established by virtue of deemed admissions to which the defendant failed to timely respond as required by N.C.R. Civ. P. 36.* Plaintiff served the requests on defendant . . . on January 28, 1998 and filed them with the court. More than thirty days elapsed, and the defendant failed to respond. At the hearing on summary judgment, counsel for the defendant orally requested that the court withdraw the deemed admissions. . . . [P]ursuant to N.C.R.

Civ. P. 36, the court has been satisfied that withdrawal or amendment of the deemed admissions would prejudice plaintiff in maintaining his action on the merits. Accordingly, the deemed admissions shall not be withdrawn.

(Emphasis added.) Thus, the trial court ordered that judgment be entered against defendant on the question of liability. Then, on 3 December 1999, the trial court issued its judgment as to damages, awarding plaintiff liquidated damages in the amount of $10,199.49, and a reasonable attorney's fee in the amount of $3,300.00 plus costs including filing fees and deposition expenses. From the foregoing two judgments mentioned, defendant appeals.

[1] Defendant first assigns error to the trial court's denying defendant's oral motion to withdraw its deemed admissions. It is defendant's argument that because "plaintiff [knew] from the time the defendant filed [its] *pro-se* answer to the complaint, that the defendant denied that [it] had ever signed a contract," its motion to withdraw the deemed admissions should have been granted. We find no merit in defendant's argument.

It is undisputed that, pursuant to Rule 36 of the North Carolina Rules of Civil Procedure, plaintiff had the right to and did, in fact, serve upon defendant a written request for admissions. The record reveals that, as required, plaintiff separately set out each matter of which an admission was requested. Therefore, according to the statute, any matter properly set forth

is admitted *unless, within 30 days after service of the request,* or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney . . . .

. . .

*If the court determines that an answer does not comply with the requirements of this rule, it may order . . . that the matter is admitted . . . .*

*(b) . . . Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. . . .* [T]he court *may* permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the

admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits. . . .

N.C. Gen. Stat. § 1A-1, Rule 36(a), (b) (1999) (emphasis added).

In the case at bar, defendant does not dispute the fact that he did not serve his answers to plaintiff's Request for Admissions within the thirty day time limit set out in Rule 36. Instead, by comparing the deemed admissions to a default judgment, defendant argues that plaintiff waived entitlement to defendant's deemed admissions "by waiting until after an untimely answer ha[d] been filed." However, defendant offers no case law, and we have found none, to support his argument that a plaintiff waives his right to deemed admissions by waiting until after a defendant has answered the request for admissions. On the contrary, where the plaintiff in *Rahim v. Truck Air of the Carolinas*, 123 N.C. App. 609, 473 S.E.2d 688 (1996) filed its response to Request for Admissions (regarding whether it had submitted a prior formal claim to defendant) some six months late, this Court held that "plaintiff's failure to answer within the allowed time period established it had submitted no formal claim to defendant within the 270 days permitted by Carmack and required by defendant's waybill." *Id.* at 615, 473 S.E.2d at 691. Thus, plaintiff Rahim's deemed admissions became judicially established.

Likewise, we find *Town of Chapel Hill v. Burchette*, 100 N.C. App. 157, 394 S.E.2d 698 (1990) controlling. Like defendant at bar, defendants Burchette were served Requests for Admissions "on the issue of [the property's lack of] record means of egress or ingress." *Id.* at 162, 394 S.E.2d at 701. Because defendants Burchette failed to respond "within 30 days after service," this Court held that "[b]y failing to respond to plaintiff's request for admissions, defendants [Burchette] allowed the lack of access to be judicially established." *Id.* "Litigants in this state are required to respond to pleadings, interrogatories and requests for admission with timely, good faith answers." *WXQR Marine Broadcasting Corp. v. JAI, Inc.*, 83 N.C. App. 520, 521, 350 S.E.2d 912, 913 (1986). Therefore, we conclude that the present plaintiff did not waive its right to the deemed admissions, and the trial court properly concluded that "withdrawal or amendment of the deemed admissions would prejudice plaintiff in maintaining [its] action on the merits."

[2] Defendant next assigns error to the trial court's grant of plaintiff's summary judgment motion on the grounds that there were genuine

issues of material fact. We disagree. Defendant is correct when it states in its brief to this Court that summary judgment is "an extreme and drastic remedy . . . ." "Summary judgment is not to be used when matters of credibility and the weight of the evidence exists." However, it has long been established law in North Carolina that where no genuine issue of material fact exists, or where a plaintiff fails to present evidence of each and every element necessary to meet its *prima facie* burden of proof, summary judgment is proper as a matter of law. *Goins v. Puleo*, 350 N.C. 277, 512 S.E.2d 748 (1999). Furthermore, in granting or denying a motion for summary judgment, there is no room for a trial court to exercise discretion. *Id.* at 281, 512 S.E.2d at 751.

In the case at bar, the only element of plaintiff's *prima facie* case with which defendant takes issue is the existence of an agreement between the parties and whether defendant signed it. Since, by defendant's failure to timely respond to plaintiff's requests for admissions, the existence of the parties' agreement and the authenticity of defendant's signature on that agreement has already been judicially established, there exists no issue of material fact. Thus, summary judgment in favor of plaintiff is proper *as a matter of law*, and the trial court did not err in granting it. *Id.*

[3] Finally, defendant's third assignment of error is that the trial court erred in granting plaintiff "attorney's fees in an amount of $3,300.00 upon a verdict of $10,199.49[.]" It is true that

"[t]he jurisprudence of North Carolina traditionally has frowned upon contractual obligations for attorney's fees as part of the costs of an action." . . . Thus the general rule has long obtained that a successful litigant may not recover attorneys' fees, whether as costs or as an item of damages, *unless such a recovery is expressly authorized by statute. Hicks v. Albertson*, 284 N.C. 236, 200 S.E.2d 40 (197[3]).

*Enterprises, Inc. v. Equipment Co.*, 300 N.C. 286, 289, 266 S.E.2d 812, 814 (1980) (emphasis added) (quoting *Supply, Inc. v. Allen*, 30 N.C. App. 272, 276, 227 S.E.2d 120, 123 (1976)). However, N.C. Gen. Stat. § 6-21.2 provides that:

Obligations to pay attorneys' fees upon any note, conditional sale contract or other evidence of indebtedness, . . . shall be valid and enforceable . . . .

. . .

(2) If such note, conditional sale contract or other evidence of indebtedness provides for the payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the "outstanding balance" owing on said note, contract or other evidence of indebtedness.

N.C. Gen. Stat. § 6-21.2(2) (1999). Further, our Supreme Court has held that "[t]he statute, being remedial, 'should be construed liberally to accomplish the purpose of the Legislature and to bring within it all cases fairly falling within its intended scope.' " *Enterprises*, 300 N.C. at 293, 266 S.E.2d at 817 (quoting *Hicks v. Albertson*, 284 N.C. 236, 239, 200 S.E.2d 40, 42 (1973)). Thus, the Court has gone on to opine that the statute's

". . . provisions indicate, either explicitly or implicitly, that an evidence of indebtedness . . . is a writing which acknowledges a debt or obligation and which is executed by the party obligated thereby." More specifically, we hold that the term "evidence of indebtedness" as used in G.S. 6-21.2 has reference to *any printed or written instrument, signed or otherwise executed by the obligor(s), which evidences on its face a legally enforceable obligation to pay money. . . .*

*Enterprises*, 300 N.C. at 294, 266 S.E.2d at 817 (emphasis omitted and emphasis added) (quoting *Supply, Inc. v. Allen*, 30 N.C. App. at 276, 227 S.E.2d at 124). Applying the Supreme Court's definition of "evidence of indebtedness" to the operator agreement at issue, we do not believe it can be disputed that the operator agreement falls within the statute and thus, allows for an award of plaintiff's attorney's fee. *Id.* Pursuant to its "Breach of Agreement" paragraph, the operator agreement clearly states:

If [defendant] breaches any provision of this Agreement, then [plaintiff] shall be entitled to recover as damages all of the profits which it would have otherwise earned during the term remaining as of the date of such breach . . . . If legal action shall be instituted by [plaintiff] to enforce the terms or conditions contained herein, then [plaintiff] shall be entitled to recover from [defendant] the reasonable attorney's fees and costs incurred by [plaintiff].

Thus, as a writing which evidences a "legally enforceable obligation to pay money" and is signed by defendant, the "Breach of Agreement"

provisions of the operator's agreement clearly bring the contract under the statute's coverage. *Enterprises*, 300 N.C. at 294, 266 S.E.2d at 817. *See also Supply*, 30 N.C. App. at 276-77, 227 S.E.2d at 124.

We note that defendant does not argue that plaintiff was not entitled to an attorney's fee at all if the operators agreement is found to come under the statute, but contends only that "[s]ince the contract in the instant case does not specify a specific percentage . . . N.C.G.S. Section 6-21.2(2) . . . control[s] . . ." and plaintiff was entitled only to an attorney's fee in the amount of fifteen percent (15%) of the "amount recoverable on the instrument." Therefore, defendant argues that the trial court erred in awarding plaintiff an attorney's fee which "exceeds thirty-two (32%) percent of the recovery allowed and is clearly excessive and not permissible under the statute." We agree.

In its judgment, the trial court found that the operator's agreement at issue

> had an initial term of three years during which neither party could unilaterally terminate the agreement.

> 5. *The Agreement [also] had an extended term (after the initial term) of five years* during which only Plaintiff had a unilateral right of termination.

(Emphasis added.) The trial court further found that there were fifty-one weeks remaining in the agreement's initial three year term at the time of defendant's breach. The trial court only awarded plaintiff liquidated damages in the amount of $10,199.49 for the fifty-one weeks remaining in the initial term—not the remainder of the eight years total. Neither party argues that the liquidated damage award was error, nor do we find it to be. However, once the trial court decided on the amount of the damage award, we believe that amount became the "outstanding balance due" on the agreement (or the "amount recoverable on the instrument") and thus, that amount is what the court was bound by in making the fifteen percent (15%) attorney's fee award pursuant to § 6-21.2. Thus, it was error for the trial court to award an attorney's fee of $3,300.00 which is more than fifteen percent (15%) of the actual damage award since the amount of an attorney's fee a party may recover is limited by the " 'outstanding balance' ow[ed,]" N.C. Gen. Stat. § 6-21.2(2).

This Court has held that N.C. Gen. Stat. § 6-21.2 "subdivision (2) *has predetermined that 15% is a reasonable amount in our case.*" *RC Associates v. Regency Ventures, Inc.*, 111 N.C. App. 367, 373, 432

S.E.2d 394, 397 (1993) (emphasis added). Thus, although the record before us shows that the trial court properly considered plaintiff's counsel's experience, hourly rate, time spent, and difficulty of the issues presented, and awarded on that basis (despite the fact that plaintiff's actual attorney's fee was in excess of $11,000.00), we hold that because the trial court's $3,300.00 attorney's fee award exceeded fifteen percent (15%) ($1,529.92) of its $10,199.49 liquidated damages award, the trial court exceeded its statutory authority in making the attorney's fee award.

The trial court's order allowing defendant's deemed admissions and granting plaintiff's summary judgment motion are affirmed. However, the trial court's order regarding the payment of plaintiff's attorney's fee is reversed and this case is remanded to the trial court for a new order to be issued with regard to the attorney's fee not inconsistent with this opinion.

Affirmed in part, reversed and remanded in part.

Judges WALKER and CAMPBELL concur.