Menscer v. Pac. All. Corp, 2017 NCBC 52.

STATE OF NORTH CAROLINA

CUMBERLAND COUNTY


RANDAL MENSCER;
ERIC MENSCER; and TROY
MENSCER, Individually and
Derivatively on behalf of STAR
LEASING, INC., a North Carolina
Corporation,

        Plaintiffs,

v.

PACIFIC ALLIANCE
CORPORATION, a Utah Corporation;
STEVEN K. CLARK; REX
WILHOITE; CORY PAYNE; BURKE
PERRETT; and MARQUETTE
TRANSPORTATION FINANCE, LLC,
a Missouri Limited Liability
Company,

        Defendants,

and

STAR LEASING, INC., a North
Carolina Corporation,

        Nominal Defendant.


PACIFIC ALLIANCE
CORPORATION,

        Plaintiff,

v.

STAR LEASING, INC.,

        Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 995
MASTER FILE
(related case 16 CVS 5904)




**ORDER AND OPINION ON
PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT
AND DEFENDANT'S MOTION TO
ENFORCE FOREIGN JUDGMENT**

1. **THIS MATTER** is before the Court on Plaintiffs Randal Menscer ("Randal"), Eric Menscer ("Eric"), and Troy Menscer's ("Troy") (collectively, the "Menscers") Motion for Partial Summary Judgment and Defendant Pacific Alliance Corporation's ("Pacific") Motion to Enforce Foreign Judgment (collectively, the "Motions"). Having considered the Motions, the briefs and evidence in support of, and opposition to, the Motions, and the arguments of counsel at a hearing on the Motions, the Court **GRANTS in part** and **DENIES in part** the Menscers' Motion for Partial Summary Judgment and **DENIES** Pacific's Motion to Enforce Foreign Judgment.

> *The Law Offices of Lonnie M. Player, Jr., PLLC, by Lonnie M. Player, Jr., and Stevens Martin Vaughn & Tadych, PLLC, by Michael J. Tadych, for Plaintiffs Randal Menscer, Eric Menscer, and Troy Menscer.*
>
> *McCoy Wiggins Cleveland & McClean PLLC, by Richard M. Wiggins and Kenneth B. Dantinne, for Defendants Pacific Alliance Corporation, Steven K. Clark, Rex Wilhoite, Cory Payne, and Burke Perrett.*
>
> *McGuireWoods LLP, by Anita M. Foss and Carlo L. Rodes, for Defendant Marquette Transportation Finance, LLC.*
>
> *Yarborough, Winters & Neville, P.A., by J. Thomas Neville, for Defendant/Nominal Defendant Star Leasing, Inc.*

Robinson, Judge.

## I. INTRODUCTION

2. At the core of these two actions lies a dispute as to the ownership and control of Star Leasing, Inc. ("Star Leasing"). Randal was the president, chief executive officer, and majority shareholder of Star Leasing until at least January 2010. At that time, Randal, on behalf of Star Leasing, and Defendant Steven K. Clark ("Clark"), on behalf of Pacific, were negotiating a share exchange pursuant to which

Randal would sell all his shares in Star Leasing in exchange for shares in Pacific. Pacific, Clark, Defendant Rex Wilhoite ("Wilhoite"), Defendant Cory Payne ("Payne"), and Defendant Burke Perrett ("Perrett") (collectively, the "Pacific Defendants") contend that Star Leasing became a wholly-owned subsidiary of Pacific pursuant to this share exchange. The Menscers contend that the share exchange never came to fruition and that Eric and Troy, in addition to Randal, are the sole shareholders, directors, and officers of Star Leasing.

3. Substantially entangled with this dispute as to the ownership and control of Star Leasing is the issue of the validity of a Judgment of the Second Judicial District Court in and for Weber County, Utah, Ogden Department (the "Utah Court") entered on April 20, 2016 in favor of Pacific and against Star Leasing in the amount of $2.8 million (the "Utah Judgment"). Plaintiffs contend that the Utah Judgment is unenforceable because it was procured through extrinsic fraud and in violation of Star Leasing's due process rights as Pacific intervened in the middle of the litigation, fired counsel for Star Leasing retained by Randal, improperly assumed control over the litigation on Star Leasing's behalf, and caused a judgment to be entered against Star Leasing. Pacific Defendants argue that, as the sole shareholder of Star Leasing, Pacific was entitled to manage and control Star Leasing's role in the Utah litigation. In essence, Plaintiffs contend that the Utah Judgment is unenforceable because the Menscers are the sole owners of Star Leasing, and Pacific Defendants contend that the Utah Judgment is enforceable because Pacific, not the Menscers, is the sole owner of Star Leasing.

## II. PROCEDURAL AND FACTUAL BACKGROUND

4. The Court does not make findings of fact when ruling on a motion for summary judgment, but it may summarize the underlying facts to provide context for its ruling. *E.g.*, *In re Estate of Pope*, 192 N.C. App. 321, 329, 666 S.E.2d 140, 147 (2008). Further, the Court sets forth here only those portions of the procedural history relevant to its determination of the Motions.

5. Star Leasing is a North Carolina corporation with its principal place of business in Fayetteville, North Carolina. (Pls.' Mot. Partial Summ. J., at Aff. Randal Menscer ¶ 2.) Star Leasing is a trucking, warehousing, and logistics company that concentrates in truckload freight hauling. (First Am. and Realigned Compl. ¶ 12 [hereinafter Realigned Compl.]; Pacific Defs.' Am. Answer ¶ 12.)

6. It is undisputed that Randal was the president of Star Leasing until at least November 2015. (Aff. Randal Menscer ¶ 2; Suppl. Materials in Supp. Pacific's Mot. Enforce Foreign J. Ex. A., at Dep. Ex. 25.) It is also undisputed that Randal was the majority shareholder of Star Leasing until at least January 2010. (Suppl. Materials in Supp. Pacific's Mot. Enforce Foreign J. Ex. A, at 33:7−15 [hereinafter Randal Dep.]; Star Leasing's Suppl. Materials in Opp'n Pacific's Mot. Enforce Foreign J. Ex. 14, at 52:25−53:19 [hereinafter Clark Dep.]; Realigned Compl. ¶ 13; Pacific Defs.' Am. Answer ¶ 13.)

7. Pacific was a Delaware corporation until in or around 2015. (Clark Dep. 216:23−25.) As of the date of this Order and Opinion, Pacific is a Utah corporation

with its principal place of business in North Salt Lake City, Utah. (Realigned Compl. ¶ 2; Pacific Defs.' Am. Answer ¶ 2.)

8. Clark is the president of Pacific, a member of Pacific's board of directors, and the majority shareholder of Pacific. (Realigned Compl. ¶ 3; Pacific Defs.' Am. Answer ¶ 3.)

9. Wilhoite is a member of Pacific's board of directors and a shareholder of Pacific. (Star Leasing's Suppl. Materials in Opp'n Pacific's Mot. Enforce Foreign J. Ex. 17, at 19:13–24 [hereinafter Wilhoite Dep.].) Wilhoite began serving on Pacific's board in 2012 and became a shareholder at some time prior to becoming a member of the board. (Wilhoite Dep. 19:13–20:5.)

10. Payne is a shareholder of Pacific and a former member of Pacific's board of directors. (Star Leasing's Suppl. Materials in Opp'n Ex. 16, at 5:4–17 [hereinafter Payne Dep.].)

11. Perrett is a member of Pacific's board of directors. (Realigned Compl. ¶ 6; Pacific Defs.' Am. Answer ¶ 6.)

12. In or around 2009, Clark, as president of Pacific, and Randal, as president of Star Leasing, discussed a possible merger of Star Leasing into Pacific, but no merger ever occurred. (Randal Dep. 81:21–23; Clark Dep. 51:21–53:4.)

13. At some time thereafter, Randal and Clark contemplated a share exchange (the "Share Exchange") by which Star Leasing was to become a wholly-owned subsidiary of Pacific. (Randal Dep. 179:8–10, 345:14–22; Clark Dep. 53:5–19, 130:22–25, 204:7–10.) Pursuant to the Share Exchange, Randal was to sell all of his

shares in Star Leasing to Pacific, thereby making Pacific the 100% owner of Star Leasing, in exchange for shares in Pacific. (Randal Dep. 179:8–22; Clark Dep. 52:21–53:7, 204:7–10.) The Share Exchange was to be effective in January 2010. (Randal Dep. 345:14–22; Clark Dep. 53:13–15.)

14. The Menscers and Pacific Defendants dispute whether the Share Exchange was ever consummated and thus whether Star Leasing became a wholly-owned subsidiary of Pacific or remained under the Menscers' control. The Menscers contend that the Share Exchange was never consummated—that Randal neither transferred any Star Leasing stock nor received any stock from Pacific as required by the Share Exchange. Pacific Defendants contend that Star Leasing became a wholly-owned subsidiary of Pacific in January 2010 pursuant to the Share Exchange.

15. On January 7, 2016, Star Leasing allegedly filed an Amended Business Corporation Annual Report ("Amended Report") with the North Carolina Department of the Secretary of State ("Secretary of State") for the fiscal year ended December 31, 2014 that listed Clark, Wilhoite, Payne, and Danny Gustafson ("Gustafson") as the officers of Star Leasing. (Mots. Dismiss, Answer, Affirmative Defenses, Countercls. and Third-Party Compl. Ex. A.) The Amended Report was signed by Clark on December 3, 2015 purporting to be Star Leasing's president. (Mots. Dismiss, Answer, Affirmative Defenses, Countercls. and Third-Party Compl. Ex. A.)

16. On February 10, 2016, Clark purported to cause Star Leasing to initiate Civil Action No. 16 CVS 995 by filing a Complaint that asserted claims against the Menscers, MMX Transportation, Inc., and LTD Ventures, Inc. alleging that the

Menscers were improperly holding themselves out as agents, officers, or directors of Star Leasing and damaging Star Leasing's property. The Complaint was verified by Clark as Star Leasing's purported president.

17. On February 25, 2016, Star Leasing allegedly filed a Business Corporation Annual Report ("Report") with the Secretary of State for the fiscal year ended December 31, 2015 that listed Clark, Wilhoite, and Perrett as the officers of Star Leasing. (Mots. Dismiss, Answer, Affirmative Defenses, Countercls. and Third-Party Compl. Ex. A.) This Report was signed by Clark on February 25, 2016 purporting to be Star Leasing's president. (Mots. Dismiss, Answer, Affirmative Defenses, Countercls. and Third-Party Compl. Ex. A.)

18. On April 6, 2016, Star Leasing allegedly filed another Report for the fiscal year ended December 31, 2015 that listed Clark, Wilhoite, and Perrett as the officers of Star Leasing. (Mots. Dismiss, Answer, Affirmative Defenses, Countercls. and Third-Party Compl. Ex. A.) This Report was signed by Clark on February 10, 2016 purporting to be Star Leasing's president. (Mots. Dismiss, Answer, Affirmative Defenses, Countercls. and Third-Party Compl. Ex. A.)

19. On April 6, 2016, the Menscers, MMX Transportation, Inc., and LTD Ventures, Inc. filed their Motions to Dismiss, Answer, Affirmative Defenses, Counterclaims, and Third-Party Complaint ("the Menscers' First Complaint") against Pacific, Clark, Wilhoite, Payne, Perrett, Rory Eddings, and Marquette Transportation Finance, LLC ("Marquette"). The Menscers' First Complaint sought, in part, a declaratory judgment that the Menscers are the sole shareholders,

directors, and officers of Star Leasing and neither Pacific, Clark, Wilhoite, Payne, nor Perrett have any ownership in, or right or claim against, Star Leasing or any of its assets.

20.   Civil Action No. 16 CVS 995 was designated as a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina dated May 17, 2016 and assigned to the undersigned by order of Chief Business Court Judge James L. Gale dated July 6, 2016.

21.   On August 10, 2016, the Court entered a Scheduling Order following a status conference with the parties at which no counsel appeared for Star Leasing.  At the status conference, counsel for both Pacific Defendants and the Menscers confirmed that it had become impossible for anyone to act on behalf of Star Leasing in the context of the controversy over who the true owners, directors, and officers of Star Leasing are, and as such, it was impossible to resolve the dispute through the posture of the case as originally filed by Star Leasing, by and through Clark.  The Scheduling Order, in part, directed the parties to confer and discuss whether Star Leasing was a necessary party to any proceeding to declare its rightful owners, if only on a nominal basis, and, if so, whether separate counsel should be retained for Star Leasing and the means by which compensation for that attorney should be funded. The Court further directed the parties to confer and discuss whether realigning the parties would allow the Court to address injuries to Star Leasing and, if not, whether the pleadings should be restated so as to limit claims that may be pursued by the parties directly.

22. On August 23, 2016, Pacific initiated Civil Action No. 16 CVS 5904 against Star Leasing by filing an authenticated copy of the Utah Judgment entered in favor of Pacific and against Star Leasing in the amount of $2.8 million and an affidavit of Clark on behalf of Pacific, the judgment creditor.

23. On September 1, 2016, the parties filed their report stating that Pacific Defendants and the Menscers had agreed that Star Leasing is a proper, nominal party to this action, Star Leasing shall be represented by J. Thomas Neville of Yarborough Winters & Neville, P.A., and realigning the parties was appropriate. In addition to Star Leasing being a nominal defendant to this action, the parties agreed that the Menscers should be realigned as plaintiffs and that Pacific Defendants should be realigned as defendants.

24. On September 20, 2016, Star Leasing, through independent counsel, filed in Civil Action No. 16 CVS 5904 its Motion to Seek Relief and Notice of Defenses to Foreign Judgment.

25. Civil Action No. 16 CVS 5904 was designated as a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina dated September 29, 2016 and assigned to the undersigned by order of Chief Business Court Judge James L. Gale dated September 30, 2016.

26. On October 5, 2016, the Menscers filed their First Amended and Realigned Complaint (the "Realigned Complaint"). The Realigned Complaint brings claims, individually and derivatively on behalf of Star Leasing, against Pacific Defendants and Marquette for a declaratory judgment, civil conspiracy, tortious interference with

business relations, violation of N.C. Gen. Stat. § 55D-18, and an accounting. (Realigned Compl. 2, 7, 9–11.)

27. On October 21, 2016, the Court entered a Consolidation Order consolidating Civil Action No. 16 CVS 995 and Civil Action No. 16 CVS 5904 into a single action, and designating Civil Action No. 16 CVS 995 as the lead case and the action in which all future pleadings and documents should be filed.

28. On January 4, 2017, the Menscers filed their Motion for Partial Summary Judgment and supporting brief, seeking judgment as matter of law on their claims for a declaratory judgment and violation of N.C. Gen. Stat. § 55D-18.

29. On January 27, 2017, Pacific filed its Motion to Enforce Foreign Judgment and supporting brief.

30. After full briefing, the Court held a hearing on the Motions on April 12, 2017. At the parties' request, the Court permitted the filing of supplemental materials, which was completed on May 12, 2017.

31. The Motions are now ripe for resolution.

### III.    MOTION FOR PARTIAL SUMMARY JUDGMENT

32. The Menscers move for summary judgment on their claim seeking a declaratory judgment and their claim for violation of N.C. Gen. Stat. § 55D-18. As to their claim for a declaratory judgment, the Menscers contend that they are entitled to a judgment declaring that they are the sole shareholders, directors, and officers of Star Leasing and neither Pacific, Clark, Wilhoite, Payne, nor Perrett have any ownership in, or right or claim against, Star Leasing or any of its assets. (Pls.' Mot.

Partial Summ. J. ¶ 7.) As to their claim for violation of section 55D-18, the Menscers contend that Star Leasing is entitled to an order directing the Secretary of State to remove from its records the Amended Report and Reports signed by Clark and filed on January 7, 2016, February 25, 2016, and April 6, 2016. (Pls.' Mot. Partial Summ. J. ¶ 8.)

A. **Legal Standard**

33. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). "A 'genuine issue' is one that can be maintained by substantial evidence." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000). In ruling on a motion for summary judgment under Rule 56(c), the Court may consider any material in the record that would be admissible in evidence. *Whitman v. Forbes*, 55 N.C. App. 706, 709, 286 S.E.2d 889, 891 (1982). "[U]ncertified or otherwise inadmissible documents may be considered by the court if not challenged by means of a timely objection." *E-B Grain Co. v. Denton*, 73 N.C. App. 14, 20, 325 S.E.2d 522, 526 (1985).

34. The moving party bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Hensley v. Nat'l Freight Transp., Inc.*, 193 N.C. App. 561, 563, 668 S.E.2d 349, 351 (2008). "Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating

specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784–85, 534 S.E.2d 660, 664 (2000). The Court must view the evidence in the light most favorable to the nonmovant. *Dobson*, 352 N.C. at 83, 530 S.E.2d at 835. However, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If [the nonmovant] does not so respond, summary judgment, if appropriate, shall be entered against [the nonmovant]." N.C. Gen. Stat. § 1A-1, Rule 56(e).

### B.   Analysis

#### 1.   Declaratory Judgment

35. The Menscers seek a declaratory judgment that they are the sole shareholders, directors, and officers of Star Leasing and that neither Pacific, Clark, Wilhoite, Payne, nor Perrett have any ownership in, or right or claim against, Star Leasing or any of its assets. (Pls.' Mot. Partial Summ. J. ¶ 7.)

36. Pursuant to N.C. Gen. Stat. § 1-253, "[c]ourts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations . . . and such declarations shall have the force and effect of a final judgment or decree." N.C. Gen. Stat. § 1-253; *see also Halstead v. Plymale*, 231 N.C. App. 253, 255–56, 750 S.E.2d 894, 896 (2013) (quoting N.C. Gen. Stat. § 1-253).

### a. The Menscers are entitled to summary judgment based on the admissions by Pacific Defendants.

37. In support of their Motion for Partial Summary Judgment, the Menscers submitted requests for admissions that were served on each of the Pacific Defendants pursuant to Rule 36 of the North Carolina Rules of Civil Procedure ("Rule(s)") and to which Pacific Defendants failed to respond. (Pls.' Mot. Partial Summ. J., at Aff. Michael J. Tadych, at Exs. A–E [hereinafter Reqs. for Admis.].)

38. "Rule 36 serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." *Excel Staffing Serv., Inc. v. HP Reidsville, Inc.*, 172 N.C. App. 281, 284–85, 616 S.E.2d 349, 352 (2005) (quoting N.C. Gen. Stat. § 1A-1, Rule 36 cmt. to 1975 amendment). Under the express language of Rule 36(a), when a request for admission is made, "[t]he matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter[.]" N.C. Gen. Stat. § 1A-1, Rule 36(a). Rule 36(b) provides that "[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." N.C. Gen. Stat. § 1A-1, Rule 36(b).

39. Our appellate courts have held that "Rule 36 means exactly what it says." *Excel Staffing Serv., Inc.*, 172 N.C. App. at 285, 616 S.E.2d at 352. "Where one party fails to timely respond to another's request for admissions, the facts in question are

deemed to be judicially admitted under Rule 36 . . . ." *J.M. Parker & Sons, Inc. v. William Barber, Inc.*, 208 N.C. App. 682, 688, 704 S.E.2d 64, 68 (2010); *see also In re Foreclosure by Goddard & Peterson, PLLC*, 789 S.E.2d 835, 840 (N.C. Ct. App. 2016) ("In order to avoid having requests for admissions deemed admitted, a party must respond within the period of the rule if there is any objection whatsoever to the request. Failure to do so means that the facts in question are judicially established." (citation omitted) (quotation marks omitted) (first quoting *Town of Chapel Hill v. Burchette*, 100 N.C. App. 157, 162, 394 S.E.2d 698, 701 (1990); then quoting *J.M. Parker & Sons, Inc.*, 208 N.C. App. at 688, 704 S.E.2d at 58)). "A judicial admission is not evidence, but rather removes the admitted fact from the field of evidence by formally conceding its existence. Admissions are as effectual as if the facts admitted were found by a jury . . . ." *Poore v. Swan Quarter Farms, Inc.*, 94 N.C. App. 530, 535, 380 S.E.2d 577, 579 (1989) (citation omitted) (quotation marks omitted). "Facts that are admitted under Rule 36(b) are sufficient to support a grant of summary judgment." *Goins v. Puleo,* 350 N.C. 277, 280, 512 S.E.2d 748, 750 (1999).

40.     Here, it is undisputed that the Menscers served requests for admissions on Pacific, Clark, Wilhoite, Payne, and Perrett on July 13, 2016. (Pls.' Mot. Partial Summ. J., at Aff. Michael J. Tadych, at ¶ 2.) It is also undisputed that none of the Pacific Defendants responded to the requests for admissions. (Aff. Michael J. Tadych ¶ 3.) To date, Pacific Defendants have not addressed their failure to respond to the Menscers' requests for admissions. Pacific Defendants did not address such failure in their response brief or during the hearing on the Motions. Further, Pacific

Defendants have not moved the Court—expressly or impliedly—to withdraw or amend their admissions.

41. The Supreme Court of North Carolina was presented with similar facts in *Goins v. Puleo*. In *Goins*, plaintiff brought a medical negligence action against defendants. 350 N.C. at 278, 512 S.E.2d at 749. Plaintiff failed to respond to defendants' requests for admission, one of which asked plaintiff to admit that the health care provided by defendants conformed with the applicable standards of medical care. *Id.* Defendants moved for summary judgment on the ground that plaintiff failed to respond to defendants' requests for admission and, as a result, plaintiff had admitted by operation of law that defendants complied with the applicable standard of care. *Id.* at 279, 512 S.E.2d at 749. Plaintiff did not move or otherwise request that the trial court allow her to withdraw or amend her admissions. *Id.* Despite plaintiff's failure to seek leave to withdraw or amend, the trial court denied defendants' motion for summary judgment, stating that summary judgment was an extreme measure. *Id.* at 279, 512 S.E.2d at 749–50. The Court of Appeals affirmed. *Id.* at 279, 512 S.E.2d at 750. Defendants appealed to the Supreme Court, arguing that because plaintiff failed to respond to the requests for admission and did not move to amend or withdraw her admissions, the admissions were conclusively established and constituted a valid basis for summary judgment. *Id.* The Supreme Court agreed with defendants and reversed the rulings of the trial court and the Court of Appeals. *Id.* The Supreme Court reasoned that plaintiff did not respond to the requests for admission or move the court, expressly or impliedly, to withdraw or

amend her admissions. *Id.* at 281, 512 S.E.2d at 751. As such, "the trial court was *required* to grant defendants' motion and enter an order of summary judgment in their favor." *Id.* (emphasis added). The Supreme Court emphasized that "[t]he entry of summary judgment in favor of defendants in this case may appear to lead to a harsh result. Nevertheless, the Rules of Civil Procedure promote the orderly and uniform administration of justice, and all litigants are entitled to rely on them." *Id.*

42. Although the decision of whether to grant a motion to withdraw or amend a party's Rule 36 admissions is within the Court's discretion, the Court is unable to exercise that discretion in the absence of an express or implied motion to withdraw or amend. Notwithstanding that the Menscers' Motion for Partial Summary Judgment was grounded on Pacific Defendants' admissions, Pacific Defendants have not made any such motion or even addressed their failure to respond to the Menscers' requests for admissions. Therefore, because Pacific Defendants failed to respond to the Menscers' requests for admissions and have not moved the Court to withdraw or amend their admissions, the matters therein are deemed admitted by Pacific Defendants and are conclusively established for purposes of this litigation and, more specifically, for purposes of the Court's determination of the Menscers' Motion for Partial Summary Judgment.

43. The matters admitted by Pacific Defendants include the following:

- There has been no merger of Star Leasing and Pacific, (Reqs. for Admis. No. 1);

- There has been no share exchange between Star Leasing and Pacific, (Reqs. for Admis. No. 4);

- Pacific Defendants possess no documents that reflect that a share exchange between Star Leasing and Pacific was ever consummated, (Reqs. for Admis. No. 13);

- Star Leasing remains an independent North Carolina corporation, (Reqs. for Admis. No. 10);

- The Menscers are the only shareholders of Star Leasing, (Reqs. for Admis. No. 9);

- Clark has no ownership interest or beneficial interest in Star Leasing, (Reqs. for Admis. Nos. 17–18);

- Perrett has no ownership interest or beneficial interest in Star Leasing, (Reqs. for Admis. Nos. 23–24);

- Payne has no ownership interest or beneficial interest in Star Leasing, (Reqs. for Admis. Nos. 33–34);

- Wilhoite has no ownership interest or beneficial interest in Star Leasing, (Reqs. for Admis. Nos. 38–39);

- Pacific has paid no consideration to Randal, Eric, Troy, or any other person for shares in Star Leasing, (Reqs. for Admis. Nos. 5–8);

- Clark has paid no consideration to any person for any ownership interest or beneficial interest in Star Leasing, (Reqs. for Admis. No. 19);

- Perrett has paid no consideration to any person for any ownership interest or beneficial interest in Star Leasing, (Reqs. for Admis. No. 25);

- Payne has paid no consideration to any person for any ownership interest or beneficial interest in Star Leasing, (Reqs. for Admis. No. 35);

- Wilhoite has paid no consideration to any person for any ownership interest or beneficial interest in Star Leasing, (Reqs. for Admis. No. 40)

- Randal is the president of Star Leasing, (Reqs. for Admis. No. 11);

- Clark is neither the president, nor a director or officer, of Star Leasing, (Reqs. for Admis. Nos. 14−16);

- Perrett is not the controller, or a director or officer, of Star Leasing, (Reqs. for Admis. Nos. 20−22);

- Payne is not a director or officer of Star Leasing, (Reqs. for Admis. Nos. 31−32); and

- Wilhoite is not a director or officer of Star Leasing, (Reqs. for Admis. No. 36−37).

44. The deposition testimony of Randal and Pacific Defendants does not overcome the conclusive effect of Pacific Defendants' judicial admissions so as to create a genuine issue of fact. Although Randal testified that Star Leasing became a subsidiary of Pacific in January 2010, (Randal Dep. 345:12−22), Randal testified that

he did not know whether Star Leasing's status as a subsidiary of Pacific ever changed and that he assumed he owned Star Leasing because he never gave his Star Leasing stock or received Pacific stock, (Randal Dep. 178:13–80:12, 346:22–47:9). Randal extensively testified that he never received any stock or payment from Pacific, the Share Exchange never came to fruition, the Menscers never transferred their Star Leasing stock to anyone, and that he had never seen or received Pacific stock certificates in his name. (Randal Dep. 97:9–98:2, 178:5–80:21, 260:16–62:10, 348:6–16, 350:11–24.)

45. To the extent Pacific Defendants contend that Pacific Defendants' deposition testimony creates a genuine issue of material fact, controlling law holds to the contrary. In *Southland Amusements & Vending, Inc. v. Rourk*, defendant failed to timely respond to plaintiff's requests for admissions. 143 N.C. App. 88, 91, 545 S.E.2d 254, 255 (2001). As a result, defendant was deemed to have admitted that defendant entered into and subsequently breached an agreement. *Id.* Plaintiff moved for summary judgment and defendant argued that an issue of material fact existed because defendant denied signing the agreement during his deposition. *Id.* at 91, 545 S.E.2d at 255–56. The trial court concluded that the genuineness of the agreement and defendant's signature on such agreement was a fact that had been conclusively established by defendant's deemed admission and entered summary judgment against defendant on the issue of his liability. *Id.* at 91–92, 545 S.E.2d at 256. On appeal, the North Carolina Court of Appeals affirmed the trial court's grant of summary judgment, stating that no issue of material fact existed and summary

judgment in favor of plaintiff was proper as a matter of law. *Id.* at 94, 545 S.E.2d at 257.

46. Similar to defendant in *Rourk*, Pacific Defendants' failure to timely respond to the Menscers' requests for admissions judicially establishes that the Menscers are the only shareholders of Star Leasing and that there has been no share exchange between Pacific and Star Leasing. Just as the defendant in *Rourk* could not overcome the conclusive effect of his judicial admissions by submitting his deposition testimony to the contrary, deposition testimony of Clark, Payne, and Wilhoite that Star Leasing is a wholly-owned subsidiary of Pacific is likewise insufficient to overcome the conclusive effect of their judicial admissions to raise a genuine issue of fact. *See also J.M. Parker & Sons, Inc.*, 208 N.C. App. at 690, 704 S.E.2d at 69 ("[D]efendants are bound by their Rule 36 admissions, and no assertions in [defendant's] affidavit can overcome the conclusive effect of defendants' previous Rule 36 admissions. Therefore, defendants cannot raise an issue of fact which would support denial of summary judgment to plaintiff.").

47. Although the judicial admissions establish that Clark, Wilhoite, and Payne are *not* directors of Star Leasing, they do not establish that the Menscers *are* the directors of Star Leasing. Nonetheless, the Menscers have submitted the minutes of Star Leasing's annual board of directors meetings, which reflect that the Menscers were the directors of Star Leasing from 2007 through 2010 and 2012 through 2014. (Star Leasing's Suppl. Materials in Opp'n Ex. 1.) Pacific submitted evidence tending to show that on October 6, 2015, Pacific, as the alleged 100% owner of Star Leasing,

removed all members of Star Leasing's board of directors and elected Clark, Wilhoite, and Payne as directors and Clark as the chairman of the board. (Randal Dep. Ex. 23, at MENSCER 000269–71.) As the Court has already concluded that Pacific Defendants are bound by their Rule 36 admissions that the Menscers, not Pacific, are the sole shareholders of Star Leasing, Pacific did not have the authority to fire the directors of Star Leasing and elect Clark, Wilhoite, and Payne as directors.

### b. Res judicata, collateral estoppel, and judicial estoppel do not apply to preclude the Menscers' claims.

48. Pacific Defendants also oppose the Menscers' Motion for Partial Summary Judgment on the grounds that pursuant to the doctrines of res judicata, collateral estoppel, and judicial estoppel, the Utah Judgment bars the Menscers' claims that they are the sole shareholders, officers, and directors of Star Leasing. (Mem. Opp'n Pls.' Mot. Partial Summ. J. 3–4.) The Court considers each of these doctrines in turn.

### (i) Res Judicata

49. "Under the doctrine of res judicata or 'claim preclusion,' a final judgment on the merits in one action precludes a second suit based on the same cause of action between the same parties or their privies." *Whitacre P'ship v. BioSignia, Inc.*, 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004). "For *res judicata* to apply, a party must show that the previous suit resulted in a final judgment on the merits, that the same cause of action is involved, and that both the party asserting *res judicata* and the party against whom *res judicata* is asserted were either parties or stand in privity with parties." *Williams v. Peabody*, 217 N.C. App. 1, 5, 719 S.E.2d 88, 93 (2011) (quoting *State ex rel. Tucker v. Frinzi*, 344 N.C. 411, 413–14, 474 S.E.2d 127, 128 (1996)). The

burden of establishing that res judicata applies is on the party asserting the doctrine. *Bluebird Corp. v. Aubin*, 188 N.C. App. 671, 679, 657 S.E.2d 55, 62 (2008).

50.    The first element of res judicata, that the previous suit resulted in a final judgment on the merits, is discussed in the Court's analysis of the Motion to Enforce Foreign Judgment.  For purposes of this analysis, the Court assumes that the Utah Judgment is a final judgment on the merits.

51.    Pacific Defendants have failed to offer evidence in support of the second element of res judicata, that the same cause of action in the previous suit is involved in the present suit.  The plaintiff in the action in Utah pursuant to which the Utah Judgment was entered (the "Utah Action"), Steve Hanson ("Hanson"), sued Pacific, Superior Filtration Products, LLC ("Superior Filtration"), Clark, and Star Leasing claiming that he was entitled to $500,000 plus interest pursuant to an unpaid promissory note executed between Hanson and Pacific.  (Pls.' Reply Br. Supp. Partial Summ. J. Ex. F, at 3 [hereinafter Hanson's Second Am. Compl.].)  Pacific, Superior Filtration, and Clark asserted crossclaims in that same action against Star Leasing for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, quantum meruit, promissory estoppel, and fraud and misrepresentation—all of which arose out of, and were based on, Star Leasing's alleged failure to repay the amount loaned by Hanson and for allegedly inducing Pacific to enter into the loan agreement with Hanson.  (Pls.' Reply Br. Supp. Partial Summ. J. Ex. G, at 11–19 [hereinafter Pacific, Superior Filtration, and Clark's Answer to Hanson's Second Am. Compl. and Am. Crosscl.].)  Star Leasing asserted

crossclaims against Superior Filtration for breach of contract, unjust enrichment, quantum meruit, promissory estoppel, and implied in fact contract—all of which arose out of, and were based on, services allegedly provided by Star Leasing to Superior Filtration. (Pacific's Mot. Enforce Foreign J. Ex. F, at 10−17 [hereinafter Star Leasing's Answer and Crosscl.].)

52. Pacific Defendants have presented no argument as to how this action involves the same causes of action as the Utah Action, nor could they—the Menscers bring claims for a declaratory judgment, civil conspiracy, tortious interference with business relations, violation of N.C. Gen. Stat. § 55D-18, and an accounting. The claims in this action are not the same as the claims asserted in the Utah Action. As such, res judicata does not apply.

53. Further, res judicata does not apply because Pacific Defendants have failed to offer any evidence in support of the third element, that the parties against whom res judicata is asserted were either parties to the prior suit or stand in privity with parties to the prior suit. It is undisputed that the Menscers were not parties to the Utah Action. Accordingly, for this requirement to be met, the Menscers must be in privity with Star Leasing, which was a party to the Utah Action. "Although the meaning of 'privity' has proven to be elusive, and 'there is no definition of the word . . . which can be applied in all cases,' the prevailing definition in our cases . . . is that privity 'denotes a mutual or successive relationship to the same rights of property.'" *Whitacre P'ship*, 358 N.C. at 36, 591 S.E.2d at 893 (first omission in original) (quoting *Frinzi*, 344 N.C. at 416−17, 474 S.E.2d at 130). Privity exists when

a person is "so identified in interest with another that he represents the same legal right." *Id.* (quoting *Frinzi*, 344 N.C. at 417, 474 S.E.2d at 130).

54.     Here, Pacific Defendants have not argued that the Menscers are in privity with Star Leasing or provided any evidentiary basis on which this Court could so conclude.   Although the Menscers contend that they are the sole shareholders, directors, and officers of Star Leasing, "[t]he mere fact that one is a shareholder or officer of a corporation is not sufficient to establish privity[.]"   *Williams*, 217 N.C. App. at 8, 719 S.E.2d at 94.   Therefore, the Court concludes that the Menscers are not in privity with Star Leasing.

55.     Nonetheless, there is an exception to the requirement that a person must be in privity with a party in order to be bound by a prior judgment.   *Id.* at 8–9, 719 S.E.2d at 94.   Under this exception, commonly referred to as the *Lassiter* exception,

> [a] person who is not a party but who controls an action, individually or in cooperation with others, is bound by the adjudications of litigated matters as if he were a party if he has a proprietary interest or financial interest in the judgment or in the determination of a question of fact or a question or law with reference to the same subject matter, or transactions; if the other party has notice of his participation, the other party is equally bound.

*Id.* (quoting *Thompson v. Lassiter*, 246 N.C. 34, 39, 97 S.E.2d 492, 496 (1957)). Control of the prior lawsuit is the threshold requirement of the exception to the privity element.   *Id.* at 10, 719 S.E.2d at 95.

56.     Here, Pacific Defendants have not offered sufficient evidence that the Menscers controlled the Utah Action.   The undisputed evidence shows that on December 5, 2014, Star Leasing's controller, Kathy Locklear ("Locklear"), at Randal's

direction, hired Jesse Oakeson ("Oakeson") of Jones, Waldo, Holbrook & McDonough, PC ("Jones Waldo") to represent Star Leasing in the Utah Action. (Pls.' Reply Br. Supp. Partial Summ. J. Ex. D, at ¶ 5 [hereinafter Aff. Kathy Locklear], Ex. I, at ¶ 5 [hereinafter Second Aff. Randal Menscer].) Randal helped Oakeson prepare Star Leasing's answer, which was filed on January 7, 2015. (Randal Dep. 344:16−45:22.) Otherwise, however, the undisputed evidence confirms that Randal had no control over, participation in, or knowledge of the Utah Action. Pacific, by and through Clark, Wilhoite, and Payne, fired Oakeson in November 2015 and hired a new attorney, Larry G. Reed ("Reed"), to represent Star Leasing without informing Randal or Locklear. (Randal Dep. Ex. 26, at PAC 002051.) Neither Randal nor Locklear knew of Oakeson's withdrawal or Reed's appearance, and neither Randal nor Locklear knew of the Utah Judgment until after it was entered. (Randal Dep. 299:23−300:2; Second Aff. Randal Menscer ¶¶ 6−9; Aff. Kathy Locklear ¶¶ 6−8.) In short, the undisputed evidence shows that Randal had minimal participation in the Utah Action on behalf of Star Leasing at its very inception and thereafter was excluded from participating in, and completely uninformed of, the Utah Action. Accordingly, the undisputed evidence shows that the Menscers did not have control over the Utah Action so as to invoke the *Lassiter* exception to the privity requirement.

57. Therefore, res judicata does not apply to bar the Menscers' assertions of ownership because the undisputed evidence shows that the same causes of action are not involved, the Menscers are not in privity with Star Leasing, and the exception to the privity requirement does not apply.

### (ii) Collateral Estoppel

58. Under the collateral estoppel doctrine, the determination of an issue in a prior judicial proceeding precludes the relitigation of that issue in a later action by a party to the prior action and its privies. *Whitacre P'ship*, 358 N.C. at 15, 591 S.E.2d at 880. For collateral estoppel to apply to a party and its privies, the party asserting the doctrine must show the following:

> (1) [T]he issues to be concluded must be the same as those involved in the prior action; (2) in the prior action, the issues must have been raised and actually litigated; (3) the issues must have been material and relevant to the disposition of the prior action; and (4) the determination made of those issues in the prior action must have been necessary and essential to the resulting judgment.

*McCallum v. N.C. Coop. Extension Serv. of N.C. State Univ.*, 142 N.C. App. 48, 54, 542 S.E.2d 227, 233 (2001) (quoting *King v. Grindstaff*, 284 N.C. 348, 358, 200 S.E.2d 799, 806 (1973)).

59. Pacific Defendants have failed to show all the requirements of collateral estoppel. As discussed above, Pacific Defendants have failed to offer evidence showing that the Menscers are in privity with Star Leasing or that the exception to the privity requirement applies. Collateral estoppel does not apply on this ground alone. Moreover, although Pacific Defendants have shown that an issue in the action before this Court is the same as an issue in the Utah Action that was raised and actually litigated, Pacific Defendants have failed to show that such issue was material and relevant to the disposition of the Utah Action, or that determination of such issue was necessary and essential to the Utah Judgment.

60.     As to the requirement that the issue to be concluded is the same as an issue involved in the Utah Action, the issue of Star Leasing's ownership was an issue determined by the Utah Court as the Utah Court concluded that Star Leasing is a wholly-owned subsidiary of Pacific. (Pacific's Mot. Enforce Foreign J. Ex. A, at ¶ 1 [hereinafter Judgment].)  As to the second requirement, this issue was raised and actually litigated because Pacific alleged that Star Leasing is a wholly-owned subsidiary of Pacific and Star Leasing, at this time acting by and through Randal, admitted such allegation, thereby obviating the need to further litigate the issue. (Pls.' Reply Br. Supp. Partial Summ. J. Ex. C, at 13, at ¶ 11 [hereinafter Pacific's Third-Party Claim]; Star Leasing's Answer and Crosscl. 3, at ¶ 11; Hanson's Second Am. Compl. ¶ 4; Star Leasing's Answer to Hanson's Second Am. Compl. ¶ 4.)

61.     Even so, Pacific Defendants have failed to show that the issue of Star Leasing's ownership was material and relevant to the disposition of the Utah Action, or that the determination of Star Leasing's ownership was necessary and essential to the Utah Judgment.  There is nothing in the record that indicates how or why the issue of Star Leasing's ownership was material and relevant to the disposition of the Utah Action, or how or why the Utah Court's determination of Star Leasing's ownership was necessary and essential to the Utah Judgment.  As discussed above, Pacific alleged that Star Leasing was indebted to it because Hanson loaned the money to Pacific with the understanding that the money would go to Star Leasing, and Star Leasing promised to repay the money loaned by Hanson.  The findings of fact on which the Utah Judgment was entered state that Pacific loaned $1.8 million of its

own funds, plus the $500,000 loaned by Hanson, to Star Leasing pursuant to an agreement obligating Star Leasing to repay such amount plus interest. (Pacific's Mot. Enforce Foreign J. Ex. B, at ¶¶ 5–6 [hereinafter Findings of Fact and Conclusions of Law].) Pacific Defendants have not produced any evidence that the ownership of Star Leasing was even remotely related to the Utah Judgment in favor of Pacific and against Star Leasing based on Pacific's $2.3 million loan to Star Leasing—a loan that the Utah Court found was made pursuant to an agreement.

62. Pacific Defendants argue that the issue of Star Leasing's ownership was necessary to the Utah Judgment because the Utah Court found that Pacific did not authorize Star Leasing's assertion of crossclaims against Superior Filtration and dismissed such crossclaims with prejudice. (Mem. Opp'n Pls.' Mot. Partial Summ. J. 5.) This argument is unavailing. All corporate powers shall be exercised by or under the authority of an entity's board of directors. N.C. Gen. Stat. § 55-8-01(b). One such corporate power is the power to sue and complain in its corporate name. N.C. Gen. Stat. § 55-3-02(a)(1). Regardless of whether Star Leasing is a wholly-owned subsidiary of Pacific, Star Leasing did not need Pacific's authorization to assert crossclaims against Superior Filtration.

63. Pacific Defendants have failed to offer any evidence that the ownership of Star Leasing was material and relevant to the disposition of the Utah Action. Pacific Defendants have further failed to offer any sufficient evidence or explanation as to why the Utah Court's determination that Star Leasing is a wholly-owned subsidiary of Pacific was necessary and essential to the Utah Judgment—which entered

judgment in the amount of $2.8 million in favor of Pacific and against Star Leasing for money owed under an agreement.

64.     In sum, collateral estoppel does not apply because Pacific Defendants have failed to show that the Menscers are in privity with Star Leasing, that the issue of Star Leasing's ownership was material and relevant to the disposition of the Utah Action, and that the Utah Court's determination of Star Leasing's ownership was necessary and essential to the Utah Judgment.

### (iii)   Judicial Estoppel

65.     Unlike res judicata and collateral estoppel, which primarily seek to protect litigants, judicial estoppel seeks to protect courts from manipulation. *Whitacre P'ship*, 358 N.C. at 24, 591 S.E.2d at 885. "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken . . . ." *Id.* at 22, 591 S.E.2d at 884 (omission in original) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). The decision of whether to apply judicial estoppel is in the sound discretion of the trial court. *Id.* at 33, 591 S.E.2d at 892. "[J]udicial estoppel requires discretionary weighing of the relevant factors, not rote application of inflexible prerequisites or an exhaustive formula." *Id.* at 28, 591 S.E.2d at 888 (quotation marks omitted).

66.     These factors include but are not limited to:

First, a party's subsequent position must be clearly inconsistent with its earlier position.        Second, courts regularly inquire whether

the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding might pose a threat to judicial integrity by leading to inconsistent court determinations or the perception that either the first or the second court was misled. Third, courts consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 28–29, 591 S.E.2d at 888–89 (citations omitted) (quotation marks omitted). "If a trial court believes that justice would not be served by judicially estopping a party's factual contention, it may decline to do so." *Id.* at 33, 591 S.E.2d at 892.

67. As made clear by our Supreme Court:

[T]he doctrine expressly guides our trial courts to consider whether a party's prior position was innocently asserted. We follow the lead of the United States Supreme Court in stressing that "it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake."

*Id.* at 34, 591 S.E.2d at 892 (quotations omitted) (quoting *New Hampshire*, 532 U.S. at 753). Notwithstanding that judicial estoppel is a discretionary doctrine, as with res judicata and collateral estoppel, the party to be judicially estopped must be in privity with the party who made the prior inconsistent statement. *Id.* at 37, 591 S.E.2d at 894.

68. As discussed above, the undisputed evidence shows that the Menscers are not in privity with Star Leasing and, even if the *Lassiter* exception applies in the judicial estoppel context, the Court has already concluded that there is no evidence that the Menscers had the requisite control over the Utah Action for the exception to apply. As such, even if otherwise justified, application of the doctrine would be improper on the undisputed evidence here.

69.     Therefore, the Court concludes that res judicata, collateral estoppel, and judicial estoppel do not apply to preclude the Menscers' claims that they are the sole shareholders of Star Leasing.  Accordingly, the Court grants the Menscers' Motion for Partial Summary Judgment on their claim for a judgment declaring that the Menscers are the sole shareholders, directors, and officers of Star Leasing and that neither Pacific, Clark, Wilhoite, Payne, nor Perrett have any ownership in Star Leasing.

### 2.     Violation of N.C. Gen. Stat. § 55D-18

70.     The Menscers seek an order directing the Secretary of State to remove from its records the Amended Report and Reports signed by Clark and filed on January 7, 2016, February 25, 2016, and April 6, 2016.  (Pls.' Mot. Partial Summ. J. ¶ 8.)

71.     Section 55D-18 provides that "[a] person commits an offense if the person signs a document the person knows is false in any material respect with intent that the document be delivered to the Secretary of State for filing." N.C. Gen. Stat. § 55D-18(a).  The Menscers contend that the Amended Report and Reports are false because they reflect that Clark, Wilhoite, Payne, and Perrett were the officers of Star Leasing, and none of them have ever been an officer or director of Star Leasing.  (Pls.' Mem. Supp. Mot. Partial Summ. J. 5.)

72.     Because the Court has concluded, based on the undisputed evidence, that the Menscers are the sole directors and officers of Star Leasing and neither Clark, Wilhoite, Payne, nor Perrett is a director or officer of Star Leasing, it follows that the Amended Report and Reports are false.  However, the Menscers have not submitted

any evidence that Clark signed the Amended Report and Reports knowing they were false. Therefore, the Court concludes that the Menscers have failed to satisfy their burden to show that no genuine issue of material fact exists, and the Menscers' Motion for Partial Summary Judgment on their claim that Clark violated section 55D-18 by filing the Amended Report and Reports is denied.

## IV. MOTION TO ENFORCE FOREIGN JUDGMENT

73. Pursuant to N.C. Gen. Stat. § 1C-1703, Pacific seeks to enforce the Utah Judgment entered against Star Leasing in the amount of $2.8 million.

### A. **Procedural and Factual Background**

74. The Court sets forth here additional procedural and factual background relevant to the Motion to Enforce Foreign Judgment.

75. Hanson filed his Complaint in the Utah Action on or about August 28, 2014 and an Amended Complaint on September 12, 2014 against Pacific, Superior Filtration, and Clark. (Pls.' Reply Br. Supp. Partial Summ. J. Ex A; *Hanson v. Pac. Alliance Corp.*, Case No. 140905482, Second District Court, Weber County, Utah, Ogden Dep't, Docket Sheet, at 3−4 [hereinafter Utah Docket Sheet]; Pls.' Reply Br. Supp. Partial Summ. J. Ex. B.) Hanson sought to recover $500,000, plus interest, pursuant to an unpaid promissory note executed between Hanson and Pacific. (Pls.' Reply Br. Supp. Partial Summ. J. Ex. B, at 2−3.) Hanson also sought to pierce Pacific's corporate veil and hold Clark personally liable for Pacific and Superior Filtration's conduct and omissions. (Pls.' Reply Br. Supp. Partial Summ. J. Ex. B, at 4.)

76. On or about October 20, 2014, Pacific, Superior Filtration, and Clark filed their answer to Hanson's Amended Complaint and Pacific filed a third-party claim (incorrectly denominated as a crossclaim) against Star Leasing. (Pacific's Third-Party Claim 21; Utah Docket Sheet 5.) Pacific's third-party claim alleged that the $500,000 loan from Hanson went to Star Leasing and Star Leasing was obligated, but had refused, to repay the loan. (Pacific's Third-Party Claim 15, at ¶¶ 23–25.) Pacific further alleged that Star Leasing owed $2.3 million to Pacific, which Star Leasing had also refused to pay. (Pacific's Third-Party Claim 15, at ¶ 25.) Pacific's third-party claim sought to recover a total of $2.8 million from Star Leasing. (Pacific's Third-Party Claim 15, at ¶ 26.)

77. On or about December 5, 2014, Locklear, at Randal's direction, hired Oakeson to represent Star Leasing in the Utah Action. (Aff. Kathy Locklear ¶ 5; Second Aff. Randal Menscer ¶ 5; Star Leasing's Suppl. Materials in Opp'n Pacific's Mot. Enforce Foreign J. Ex. 9.)

78. On January 7, 2015, Star Leasing, acting at Randal's direction, filed its answer to Pacific's third-party claim and asserted crossclaims against Superior Filtration, a wholly-owned subsidiary of Pacific, that arose out of services allegedly provided by Star Leasing to Superior Filtration both before and after Star Leasing became a subsidiary of Pacific. (Star Leasing's Answer and Crosscl. 11–12, 17; Utah Docket Sheet 6.) In its answer, Star Leasing admitted that it is a wholly-owned subsidiary of Pacific. (Pacific's Third-Party Claim 13, at ¶ 11; Star Leasing's Answer and Crosscl. 3, at ¶ 11.)

79. Star Leasing alleged in its answer that it did not become a subsidiary of Pacific until January 2010 and alleged upon information and belief that the agreement and plan of merger was superseded by an agreement and plan of exchange dated January 1, 2010. (Star Leasing's Answer and Crosscl. 3, at ¶ 14.) In its crossclaims against Superior Filtration, Star Leasing alleged multiple times that it became a subsidiary of Pacific. (*E.g.*, Star Leasing's Answer and Crosscl. 11–14, at ¶¶ 7, 13, 16–17, 22–24.) Star Leasing's Answer and Crossclaim were prepared and filed by Oakeson, and Randal testified that he helped Oakeson prepare the answer and "told [Oakeson] to proceed under the auspices" that Star Leasing was a part of Pacific. (Randal Dep. 344:16–45:24.)

80. On or about June 26, 2015, Hanson filed his Second Amended Complaint adding Star Leasing as a defendant and seeking the same relief as in his original Complaint and Amended Complaint. (Hanson's Second Am. Compl. 5; Utah Docket Sheet 8.)

81. On or about July 22, 2015, Star Leasing filed its answer to Hanson's Second Amended Complaint, again alleging upon information and belief that it did not become a subsidiary of Pacific until January 2010 and that the agreement and plan of merger was superseded by an agreement and plan of exchange dated January 1, 2010. (Star Leasing's Answer to Hanson's Second Am. Compl. ¶ 4; Utah Docket Sheet 8.)

82. On or about August 11, 2015, Pacific, Superior Filtration, and Clark filed their answer to Hanson's Second Amended Complaint and amended crossclaims

against Star Leasing. (Pacific, Superior Filtration, and Clark's Answer to Hanson's Second Am. Compl. and Am. Crosscl. 20; Utah Docket Sheet 9.) Pacific, Superior Filtration, and Clark's amended crossclaims made the same allegations as Pacific's third-party claim with respect to the $500,000 loan; however, they did not allege or seek to recover the additional $2.3 million Pacific sought in its original third-party claim against Star Leasing. (Pacific, Superior Filtration, and Clark's Answer to Hanson's Second Am. Compl. and Am. Crosscl. 11, 13–19.)

83. During a meeting of Pacific's shareholders held on September 22, 2015, Randal was removed from Pacific's board of directors. (Randal Dep. Ex. 23, at MENSCER 000251, 000254.) Clark, Wilhoite, and Payne were retained as directors. (Randal Dep. Ex. 23, at MENSCER 000251, 000253–54.)

84. On October 6, 2015, pursuant to a special meeting on or about September 23, 2015, Pacific, as the alleged 100% owner of Star Leasing, removed all members of Star Leasing's board of directors and elected Clark, Wilhoite, and Payne as directors and Clark as the chairman of the board. (Randal Dep. Ex. 23, at MENSCER 000269–71.)

85. On or about November 4, 2015, Clark, Wilhoite, and Payne, acting as the alleged board of directors of Star Leasing, terminated Randal as Star Leasing's president and appointed Clark as the president and chief executive officer of Star Leasing. (Randal Dep. Ex. 25.)

86. On or about November 12, 2015, Clark, Wilhoite, and Payne, acting as the alleged board of directors of Star Leasing, directed Clark and/or Gustafson to

terminate the legal representation of Star Leasing by Oakeson and Jones Waldo. (Randal Dep. Ex. 26, at PAC 002051.)

87. On or about December 1, 2015, Reed filed an appearance as counsel for Star Leasing in the Utah Action. (Pls.' Reply Br. Supp. Partial Summ. J. Ex. H; Utah Docket Sheet 12.) Neither Locklear nor Randal hired Reed or were informed of his appearance. (Aff. Kathy Locklear ¶¶ 4, 7–8; Second Aff. Randal Menscer ¶¶ 4, 7–8; Randal Dep. 299:7–300:2.)

88. On December 2, 2015, Oakeson and Jones Waldo filed a notice of withdrawal stating that Reed represented Star Leasing. (Notice of Withdrawal of Counsel 2; Utah Docket Sheet 13.) Neither Randal nor Locklear were informed of or consented to Oakeson's withdrawal. (Aff. Kathy Locklear ¶ 7; Second Aff. Randal Menscer ¶ 7; Randal Dep. 299:23–300:2.)

89. On December 4, 2015, Hanson filed his Third Amended Complaint. (Utah Docket Sheet 13.)

90. On December 15, 2015, Hanson's claims against Star Leasing were dismissed by order of the court following a stipulated motion by Hanson and Star Leasing. (Utah Docket Sheet 14.)

91. On December 18, 2015, Pacific, Superior Filtration, and Clark filed their answer to Hanson's Third Amended Complaint. (Utah Docket Sheet 14.)

92. On April 6, 2016, Reed, as counsel for Star Leasing, filed a Motion and Stipulation for Dismissal of Cross-claim [sic] against Pacific. (Utah Docket Sheet 16.)

The Utah docket does not reflect that Star Leasing ever asserted a claim against Pacific.

93.    On April 7, 2016, Pacific and Star Leasing filed a Stipulation and Joint Motion for Entry of Findings of Fact and Conclusions of Law, and Judgment (the "Stipulation"). (Utah Docket Sheet 16.)

94.    On April 8, 2016, the Utah Court, pursuant to the motion and stipulation for dismissal, entered an order dismissing Star Leasing's purported crossclaim against Pacific. (Pls.' Reply Br. Supp. Partial Summ. J. Ex. K; Utah Docket Sheet 16.)

95.    On April 20, 2016, the Utah Court, pursuant to the Stipulation, entered its Findings of Fact and Conclusions of Law (the "Findings and Conclusions") as well as a Judgment. (Findings of Fact and Conclusions of Law 1; Judgment 1.) The Findings and Conclusions state, in relevant part, the following:

FINDINGS OF FACT

. . . .

3. On or about January 1, 2010, [Pacific] and Star Leasing executed an Agreement and Plan of Merger pursuant to which Star Leasing became a wholly owned subsidiary of [Pacific].

. . . .

5. On or about July 19, 2010, [Pacific] obtained a loan in the amount of $500,000 from the above-named plaintiff, [Hanson], with the understanding between [Pacific] and Star Leasing that such funds, in addition to approximately $1.8 million of [Pacific]'s funds, would be loaned by [Pacific] to Star Leasing.

6. [Pacific] loaned $2.3 million to Star Leasing pursuant to an agreement obligating Star Leasing to repay such amount, plus interest.

. . . .

8. Despite demand for repayment, Star Leasing, by and through its former President and Chief Executive Officer, has failed, refused and neglected to repay the $2.3 million borrowed from [Pacific].

9. Star Leasing owes [Pacific] the principal amount of $2.3 million, which includes the $500,000 borrowed from Hanson by [Pacific], plus interest in the amount of $500,000, for a total debt of $2.8 million.

10. Star Leasing has asserted cross-claims [sic] against Superior Filtration . . . .

11. [Pacific] did not authorize Star Leasing's assertion of cross-claims [sic] against Superior Filtration.

. . . .

CONCLUSIONS OF LAW

. . . .

2. Star Leasing is indebted to [Pacific] in the total amount of $2.8 million, which sum is presently due and owing.

. . . .

9. Star Leasing's cross-claims [sic] against Superior Filtration should be dismissed with prejudice.

(Findings of Fact and Conclusions of Law 2–4.)

96.     The Utah Judgment states, in relevant part, the following:

1. Star Leasing is a wholly-owned subsidiary of [Pacific], having been acquired by [Pacific] pursuant to purchase documents dated January 1, 2010;

2. Star Leasing is indebted to [Pacific] in the total amount of $2,800,000.00 and Star Leasing acknowledges such indebtedness;

3. Judgment is hereby entered in favor of [Pacific] and against Star Leasing in the total amount of $2,800,000.00, plus post judgment

interest at the Utah statutory rate of 2.65 percent, until the Judgment is paid in full;

4. Star Leasing received certain funds from [Pacific] and will cooperate with [Pacific] in [Pacific]'s effort, to be directed by the boards of directors of [Pacific] and Star Leasing, to repay any and all sums owed by [Pacific] to [Hanson]. [sic]

5. Star Leasing is hereby ordered to permit [Pacific] to access all of its books and records, and to permit [Pacific] to assume operational control of Star Leasing; and

6. Star Leasing's cross-claim [sic] against [Superior Filtration] herein is hereby dismissed with prejudice.

(Judgment 2.)

97.    In June or early July of 2016, Randal learned of the Utah Judgment. (Second Aff. Randal Menscer ¶ 8.)

98.    On July 14, 2016, Randal filed a motion to intervene in the Utah Action. (Pls.' Reply Br. Supp. Partial Summ. J. Ex. O, at 9; Utah Docket Sheet 20.)

99.    On August 23, 2016, Pacific filed in this Court an authenticated copy of the Utah Judgment and an Affidavit of Judgment Creditor.

100.    On September 20, 2016, Star Leasing, through independent counsel, filed in this Court its Motion to Seek Relief and Notice of Defenses to Foreign Judgment.

101.    On November 16, 2016, Hanson, on the one hand, and Pacific, Superior Filtration, and Clark on the other, filed in the Utah Court a Stipulation and Joint Motion for Dismissal.  (Utah Docket Sheet 25.)

102.    On or about November 17, 2016, Pacific filed in the Utah Court a Confession of Judgment in the principal amount of $500,000 in favor of Hanson.  (Pls.' Reply Br. Supp. Partial Summ. J. Ex. N; Utah Docket Sheet 25.)

103. On December 28, 2016, the Utah Court entered an order denying Randal's motion to intervene on the ground that it was not timely. (Pacific's Mot. Enforce Foreign J. Ex. G, at ¶ 5; Utah Docket Sheet 26.)

104. On January 12, 2017, the Utah Court entered judgment on Hanson's first cause of action in favor of Hanson and against Pacific in the amount of $689,205.48. (Utah Docket Sheet 26–27.)

105. On January 26, 2017, Randal filed his notice of appeal to the Utah Supreme Court of the order denying his motion to intervene. (Pls.' Reply Br. Supp. Partial Summ. J. Ex. Q; Utah Docket Sheet 27.)

106. On January 27, 2017, Pacific filed in this Court its Motion to Enforce Foreign Judgment and brief in support.

### B. Legal Standard

107. The Uniform Enforcement of Foreign Judgments Act (the "Act") provides one mechanism by which a party may seek to enforce in North Carolina a judgment rendered by the courts of another state. *Rossi v. Spoloric*, 781 S.E.2d 648, 654 (N.C. Ct. App. 2016); *see* N.C. Gen. Stat. § 1C-1703. "Pursuant to the Act, a judgment creditor must file with the clerk of superior court a 'copy of [the] foreign judgment authenticated in accordance with an act of Congress or the statutes of this State.'" *Id.* (alteration in original) (quoting N.C. Gen. Stat. § 1C-1703(a)). "A judgment so filed has the same effect and is subject to the same defenses as a judgment of this State . . . ." N.C. Gen. Stat. § 1C-1703(c).

108. After the judgment creditor has filed an authenticated copy of the foreign judgment and an affidavit, "[t]he judgment debtor may file a motion for relief from, or notice of defense to, the foreign judgment[.]" N.C. Gen. Stat. § 1C-1705(a). If the judgment debtor files such a motion or notice, then the judgment creditor may move to enforce the foreign judgment as a judgment of this State. N.C. Gen. Stat. § 1C-1705(b). The judgment creditor has the burden of proving that the foreign judgment is entitled to full faith and credit. N.C. Gen. Stat. § 1C-1705(b); *see also Lust v. Fountain of Life, Inc.*, 110 N.C. App. 298, 300–01, 429 S.E.2d 435, 437 (1993). However, "[t]he introduction into evidence of a[n authenticated] copy of the foreign judgment . . . establishes a presumption that the judgment is entitled to full faith and credit." *Rossi*, 781 S.E.2d at 654. The burden then rests on the judgment debtor "to present evidence to rebut the presumption that the judgment is enforceable by asserting a defense under [N.C. Gen. Stat.] § 1C-1705(a)." *Id.* (alteration in original) (quoting *Seal Polymer Indus.-Bhd v. Med-Express, Inc., USA*, 218 N.C. App. 447, 448, 725 S.E.2d 5, 6–7 (2012)). "The trial court must then hold a hearing, conducted in accordance with the Rules of Civil Procedure, to determine if the foreign judgment is entitled to full faith and credit." *HCA Health Servs. of Tex., Inc. v. Reddix*, 151 N.C. App. 659, 663, 566 S.E.2d 754, 756 (2002) (quotation marks omitted).

109. The defenses available to a judgment debtor under section 1C-1705(a) include that the foreign judgment has been appealed, enforcement of the judgment has been stayed by the court which rendered it, or "any other ground for which relief from a judgment of this State would be allowed." N.C. Gen. Stat. § 1C-1705(a).

Despite the language of the Act that the foreign judgment "is subject to the same defenses as a judgment of this State[,]" N.C. Gen. Stat. § 1C-1703(c), our Supreme Court has held "that the defenses preserved under [the Act] are limited by the Full Faith and Credit Clause to those defenses which are directed to the validity and enforcement of a foreign judgment." *DocRx, Inc. v. EMI Servs. of N.C.*, 367 N.C. 371, 382, 758 S.E.2d 390, 397 (2014). These defenses include

> that the judgment creditor committed extrinsic fraud, that the rendering state lacked personal or subject matter jurisdiction, that the judgment has been paid, that the parties have entered into an accord and satisfaction, that the judgment debtor's property is exempt from execution, that the judgment is subject to continued modification, or that the judgment debtor's due process rights have been violated.

*Id.*

**C.   Analysis**

110.   Here, Pacific has satisfied the requisite proof requirements to establish a presumption that the Utah Judgment is entitled to full faith and credit by filing an authenticated copy of the Utah Judgment and an affidavit of the judgment creditor. Accordingly, the burden is on Star Leasing, as the judgment debtor, to rebut the presumption.

111.   Star Leasing, through independent counsel, argues that the Utah Judgment is not enforceable because it was procured through extrinsic fraud and in violation of Star Leasing's due process rights in that Pacific, by and through Clark, prevented Star Leasing from defending itself and fully participating in the Utah Action.

112. In order to attack a foreign judgment on the basis of fraud, extrinsic fraud, rather than intrinsic fraud, must be alleged. *E.g.*, *Hooks v. Eckman*, 159 N.C. App. 681, 685, 587 S.E.2d 352, 354 (2003). "Extrinsic fraud is that which is collateral to the foreign proceeding, and not that which arises within the proceeding itself and concerns some matter necessarily under the consideration of the foreign court upon the merits." *First-Citizens Bank & Tr. Co. v. Four Oaks Bank & Tr. Co.*, 156 N.C. App. 378, 380, 576 S.E.2d 722, 724 (2003) (quotation marks omitted). Fraud is extrinsic "when it deprives the unsuccessful party of an opportunity to present his case to the court. If an unsuccessful party to an action has been prevented from fully participating therein there has been no true adversary proceeding, and the judgment is open to attack at any time." *Hooks*, 159 N.C. App. at 684, 587 S.E.2d at 354 (quoting *Stokley v. Stokley*, 30 N.C. App. 351, 354–55, 227 S.E.2d 131, 134 (1976)).

113. Extrinsic fraud is not fraud in the cause of action, but fraud in the management of the cause of action. *McCoy v. Justice*, 199 N.C. 602, 605, 155 S.E. 452, 454–55 (1930). On the other hand,

> intrinsic fraud occurs when a party (1) has proper notice of an action, (2) has not been prevented from full participation in the action, and (3) has had an opportunity to present his case to the court and protect himself from any fraud attempted by his adversary. Specifically, intrinsic fraud describes matters that are involved in the determination of a cause on its merits. In contrast, extrinsic fraud prevents a court from making a judgment on the merits of a case.

*Hooks*, 159 N.C. App. at 684–85, 587 S.E.2d at 354 (citation omitted). Examples of intrinsic fraud include false or manufactured evidence and perjured testimony. *Id.*

at 685, 587 S.E.2d at 354; *Scott v. Farmers Coop. Exch., Inc.*, 274 N.C. 179, 183, 161 S.E.2d 473, 476 (1986).

114. Star Leasing does not dispute that it had notice of the Utah Action; rather, Star Leasing argues that it did not have notice of the proceedings related to entry of the Utah Judgment and that Pacific, by and through Clark, prohibited Star Leasing from fully participating in the Utah Action by firing counsel hired by and through Randal and Locklear on behalf of Star Leasing.

115. The evidence shows that at the beginning of the Utah Action, Randal, as Star Leasing's president and chief executive officer, was managing the litigation on behalf of Star Leasing. Thereafter, however, the evidence shows that Randal did not manage or participate in the litigation on behalf of Star Leasing.

116. In essence, Clark, Wilhoite, and Payne—acting as the sole directors of both Pacific and Star Leasing—controlled the litigation on behalf of both Pacific and Star Leasing in an action by Pacific and Clark against Star Leasing. Pacific, by and through Clark, Wilhoite, and Payne, improperly assumed control over Star Leasing and litigation on its behalf during the ongoing Utah lawsuit by Pacific against Star Leasing. Pacific, by and through Clark, Wilhoite, and Payne, managed both sides of the litigation between Pacific and Star Leasing by electing themselves as directors of Star Leasing and thereafter firing Oakeson, the attorney hired at the outset of the litigation to represent Star Leasing, and hiring Reed. Once Reed was in control as counsel for Star Leasing, Pacific Defendants caused Reed, on behalf of Star Leasing, to consent to a multi-million dollar judgment being entered in favor of Pacific, the

alleged parent corporation, against Star Leasing, the alleged wholly-owned subsidiary. Such control by those also directing litigation on behalf, and in the best interests, of Pacific—Star Leasing's direct adversary—prevented Star Leasing from fully participating in the Utah Action such that there was no true adversary proceeding. Star Leasing could not have fully participated in the Utah Action when litigation on its behalf was entirely managed and controlled by those with an interest in, and directing the litigation of, Pacific—its direct adversary.

117. Further, it is especially true that Star Leasing was prevented from fully participating in the Utah Action such that there was no true adversary proceeding because Clark, in his individual capacity, was also a named defendant and cross-claimant. Hanson claimed that Clark was personally liable for Pacific and Superior Filtration's conduct under alter ego and veil-piercing theories. Clark joined Pacific and Superior Filtration in asserting crossclaims against Star Leasing for the amounts Pacific, Superior Filtration, and/or Clark were deemed liable to Hanson. Yet, Clark was behind the scenes participating and directing the litigation from all angles—on behalf of himself; on behalf of Pacific as its president and a director; on behalf of Superior Filtration, a wholly-owned subsidiary of Pacific; and on behalf of Star Leasing as its purported president, chief executive officer, and chairman of the board. Indeed, the resolution pursuant to which Oakeson was fired states that "[t]his action is take [sic] place forthwith at the direction of Steven K. Clark, the president and CEO of Star Leasing Inc. and/or Danny Gustafson, Chief Financial Officer of Star Leasing Inc." (Randal Dep. Ex. 26, at PAC 002051.)

118.    Pacific argues that Star Leasing has failed to rebut the presumption that the Utah Judgment is entitled to full faith and credit.  (Mem. Supp. Pacific's Mot. Enforce Foreign J. 7.)  To support its argument, Pacific relies in part on Randal's admissions to Pacific's discovery requests in an ongoing action in Utah, *Johnson v. Pacific Alliance Corp.*, Civil No. 140908429, Third Judicial District Court, Salt Lake County, Utah.  (Mem. Supp. Pacific's Mot. Enforce Foreign J. 8−9, 13−14.)  The Court cannot consider admissions made by Randal in another action.  Utah R. Civ. P. 36(c) ("Any admission under this rule is for the purpose of the pending action only.  It is not an admission for any other purpose, nor may it be used in any other action.").

119.    Pacific also argues that Randal fully participated in the proceedings in Utah that resulted in the Utah Judgment, and while participating in the Utah Action, Star Leasing, by and through Randal, did not allege any abuses of Star Leasing's due process rights.  (Mem. Supp. Pacific's Mot. Enforce Foreign J. 13, 15−16.)  As a result, Pacific argues that Star Leasing cannot collaterally attack the Utah Judgment based on an argument it could have raised in the rendering jurisdiction.   (Mem. Supp. Pacific's Mot. Enforce Foreign J. 13, 16.)

120.    Pacific's arguments fly in the face of its contention—made for the first time during the hearing on the Motions—that Pacific fired Oakeson and hired Reed to represent Star Leasing.  Pacific's evidence shows that Randal did not fully participate in the Utah Action that resulted in the Judgment.  The evidence submitted by the Menscers indicates that Randal did not know of the Utah Judgment until two to three months after it was entered, Randal did not know of or review the Stipulation, and

Randal did not know Oakeson withdrew or that Star Leasing was represented by Reed. Moreover, the relevant question is not whether *Randal* fully participated in the Utah Action; rather, the relevant question is whether *Star Leasing* was prevented from fully participating in the Utah Action such that there was no true adversary proceeding. Star Leasing could not have fully participated when Pacific—Star Leasing's direct adversary—assumed control over Star Leasing and the Utah litigation on Star Leasing's behalf.

121. In sum, the Court concludes that Star Leasing has presented sufficient evidence that Star Leasing was prevented from fully participating in the Utah Action such that there was no true adversary proceeding to rebut the presumption that the Utah Judgment is entitled to full faith and credit, and that Pacific has failed to satisfy its burden of proving that the Utah Judgment is entitled to full faith and credit. Therefore, Pacific's Motion to Enforce Foreign Judgment is denied.

## V. CONCLUSION

122. For the foregoing reasons, the Court hereby **ORDERS** as follows:

A. The Court **GRANTS** the Menscers' Motion for Partial Summary Judgment on the Menscers' claim for a declaratory judgment that they are the sole shareholders, directors, and officers of Star Leasing and neither Pacific, Clark, Wilhoite, Payne, nor Perrett have any ownership in Star Leasing.

B.    The Court **DENIES** the Menscers' Motion for Partial Summary Judgment on the Menscers' claim for violation of N.C. Gen. Stat. § 55D-18.

C.    The Court **DENIES** Pacific's Motion to Enforce Foreign Judgment.

**SO ORDERED**, this the 16th day of June, 2017.

/s/ Michael L. Robinson

Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases